### PHOENIX INSURANCE COMPANY v. R. C. SHEARMAN.

Delivered December 11, 1897.

#### 1. Statute—Application—Special Verdict—Submission of Issues.

The Act of 1897, providing that upon appeal from a judgment entered on a special verdict an issue not submitted and not requested shall be deemed as found in such manner as to support the judgment, provided there be evidence to sustain such finding, is applicable on appeal from a judgment so rendered before the act was passed.

#### 2. Insurance—Forfeiture—Burden of Proof.

It will not be presumed, in aid of a forfeiture of a policy of insurance under a provision prohibiting the use or keeping of gasoline on the premises, that gasoline does not lose its identity when mixed with other ingredients to make an illuminating fluid, but the burden is upon the company to show that it retains its identity.

#### 3. Same—Same—False Swearing.

False swearing, within the meaning of a policy of insurance forfeiting the same for false swearing, can not be predicated of an honest misstatement of the value of the destroyed property.

##### ON REHEARING.

#### 4. Statute—Application—Procedure—Pending Actions.

A new statute which deals only with procedure applies prima facie to actions pending as well as future.

APPEAL from Grayson. Tried below before Hon. DON A. BLISS.

*Richard Morgan* and *Beaty & Culver,* for appellant.

*Moseley & Smith,* for appellee.

STEPHENS, Associate Justice.—This appeal is from a judgment on a special verdict in favor of appellee in the sum of $1700, the amount of a fire insurance policy issued by appellant company to M. A. Parish, January 15, 1896, and assigned to appellee after the fire, which, on May 23, 1896, in the city of Denison, destroyed the stock of merchandise and

store fixtures insured, then of the aggregate value of $3659.63, as found by the jury.

It is first insisted that the judgment must be reversed because the special verdict failed to find the fact of the alleged assignment of the policy, though this was not denied under oath, but only put in issue, if at all, by the general denial.

After submitting the special issues, which did not include that of the assignment of the policy, the charge states, that "It is agreed by the parties that the foregoing findings of fact you are directed to make and the foregoing questions cover all the material issues of fact involved in this cause." This statement was controverted for the first time in the motion for a new trial.

The statement of facts contains no such agreement, and unless it is therefore to be inferred that none was made, the record is silent upon the subject. No exception was taken to the charge, nor did appellant request the court to submit this issue to the jury.

At the last session of the Legislature, in order to cure such technical defects in special verdicts, a law was enacted which provides: "But the failure to submit any issue shall not be deemed a ground for reversal of the judgment upon appeal or writ of error, unless its submission has been requested in writing by the party complaining of the judgment. Upon appeal or writ of error, an issue not submitted and not requested by a party to the cause, shall be deemed as found by the court in such manner as to support the judgment, provided there be evidence to sustain such finding." Gen. Laws, Called Session, p. 15; Sayles' (New) Civ. Stats., art. 1331.

The statute regulating the assignment of written instruments provides that when sued upon by the assignee the assignment shall be regarded as fully proved, unless the defendant shall deny in his plea that the same is genuine, etc. Sayles' (New) Civ. Stats., art. 313. The policy, with the assignment indorsed thereon, was read in evidence.

We conclude, therefore, that the above quoted Act of 1897 cures the technical defect complained of, although it was passed after the case was tried. Hence we need not determine whether, in the absence of this enactment, the verdict would have sustained the judgment. It is laid down by Mr. Cooley in his standard work on Constitutional Limitation, that "if a case is appealed, and pending the appeal the law is changed, the appellate court must dispose of the case under the law in force when its decision is rendered." Cool. Const. Lim., p. 469.

As the amendment in question takes the place of article 1331 of our Revised Statutes, regulating the procedure in cases of special verdicts, we have no law to govern us unless we follow the amendment. Such amendments of statutes prescribing methods of procedure do not fall within our constitutional inhibition of retroactive laws. It is even further laid down by Mr. Cooley, that "a statutory right to have cases reviewed on appeal may be taken away by a repeal of the statute, even

as to cases which had been previously appealed." Cool. Const. Lim., pp. 472, 473.

The remaining contentions of appellant arise upon the construction and application of the following forfeiture clauses of the policy, which we quote from its brief:

"This entire policy, unless otherwise provided by agreement indorsed herein or added hereto, shall be void if  *  *  *  illuminating gas or vapor be generated in the described building (or adjacent thereto) for use therein, or if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used, or allowed on the above described premises  *  *  *  gasoline."

"This entire policy shall be void  *  *  *  in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

The material facts relied on and found by the special verdict to show a forfeiture under the clause first quoted, were thus correctly summarized in the fourth paragraph of the court's charge, reading: "During the time this policy was in force, M. A. Parish, having procured a recipe for the manufacture of what is called French electric fluid, purchased a gallon of gasoline and used it in making some of this fluid, which was made by mixing in a gallon of gasoline, a double handful of salt, a handful of soda, and a piece of gum camphor as large as the end of one's thumb. She placed this fluid in a five-gallon can, which she kept in the coal shed on said tract of land, separate and apart from said building. From this five-gallon can she would put into a gallon can enough of said fluid to fill a lamp which was used in lighting said storehouse at night. She kept said gallon can on a shelf in the back part of the store. Other lamps were used in lighting the store at night, but in all of these coal oil was used. She had used up all of this French electric fluid that she had on hand several days before the fire occurred, and was not using any of the same at the time of the fire."

The verdict contained the further finding: "That no illuminating gas was generated in said building for use therein, and that the light was made by the burning of said fluid direct as a coal oil lamp burns coal oil."

We are of opinion that the undisputed facts set forth in the charge, as quoted above, not only warranted this finding, but also the further conclusion that appellant had failed to show that gasoline had been "kept, used, or allowed on the above described premises." As forfeitures are not favored, the rule of strict construction applies, and forbids a resort to presumption or inference in establishing a forfeiture. If gasoline and French electric fluid were one and the same thing, it was incumbent on appellant to prove it. In the absence of expert testimony, we have no means of determining, without a resort to presumption, whether the gasoline lost or retained its identity when it became a constituent of the new compound or mixture. That the burden was on appellant to establish by proof the precise fact or facts relied on to show a forfeiture,

seems to be well settled, as will appear from numerous cases cited in appellee's brief.

But conceding that the evidence did show that an insignificant quantity of gasoline had been used on the premises, though none was there when the fire occurred, appellee yet contends that no *substantial* violation of the terms of the policy were proven, and cites quite an array of authority in support of this contention. Without, however, announcing any definite conclusion thereon, we hold that appellant failed to show a breach of the clause in question; and hence overrule all the assignments of errror relating thereto.

We are thus brought to the remaining issue of fraud and false swearing. The contention of appellant was and is that in making out the sworn proofs of loss an excessive value was placed upon the property destroyed, but we hardly think the testimony would have warranted, much less required, a finding of fraud or false swearing. The method of arriving at the value was fully shown in the proofs of loss, the value there stated was only about $1600 above what the jury found it to be, and no motive appears for the excessive valuation, as the value proven on the trial and fixed by the verdict was nearly $2000 in excess of the amount of the policy.

The charge submitting this issue, to which error is assigned, taken as a whole, stated the law with substantial accuracy. Something more than swearing to what is not true must be shown to make out a case of false swearing within the meaning of the policy; and this distinction the charge recognized and in effect stated, at least sufficiently with reference to the facts of this case. Ins. Co. v. Starr, 71 Texas, 733; Ins. Co. v. Swan, 41 S. W. Rep., 519.

The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

#### January 29, 1898.

STEPHENS, ASSOCIATE JUSTICE.—It is strenuously insisted in this motion, as well as in another case just submitted, that the Act of the last Legislature amending article 1331, Revised Statutes, so as to cure formal defects in special verdicts, is not applicable to appeals taken and judgments rendered before the act was passed. We have therefore concluded to make a fuller statement of our views upon the question.

That the law, though in terms applying and intended by the Legislature to apply to appeals pending when it was enacted, is not unconstitutional, does not seem to be an open question in this State. At an early day, in the case of De Cordova v. City of Galveston, 4 Texas, 470, the question came before the Supreme Court, upon the construction of a provision of the Constitution of the Republic forbidding the enactment of retrospective laws, as to what, within the meaning of such provision, which is substantially the same as that now found in our Constitution,

was a retrospective or retroactive law. After reviewing the decisions construing similar constitutional provisions in other States, Chief Justice Hemphill thus states the conclusion of the court:

"The cases to which reference has been made and the opinions of the courts in expounding this constitutional inhibition will serve to illustrate the intention of the convention in imposing the restriction. Laws are deemed retrospective, and within the constitutional prohibition which by retrospective operation destroy or impair vested rights or rights to do certain actions or possess certain things according to the law of the land; but laws which affect the remedy merely are not within the scope of the inhibition unless the remedy be taken away altogether, or incumbered with conditions that would render it useless or impracticable to pursue it. Or if the provisions regulating the remedy be so unreasonable as to amount to a denial of right, as, for instance, if a statute of limitations applied to existing causes barred already, or did not afford a reasonable period for their prosecution, or if an attempt were made by law, either by implication or expressly, to revive causes of action already barred, such legislation would be restrospective within the intent of the prohibition, and would therefore be wholly inoperative. There can not in the nature of things be a vested right to a remedy which existed at the date of the contract; or, in other words, the mode, times, and manner of prosecuting suits must be left to the regulation of the legislative authority."

This decision is in line with the current of authority everywhere, and is decisive of the constitutional question involved—the law being one which merely regulates the conduct of legal proceedings in the courts. The constitutionality of the law, however, is not so much questioned, as the construction that it is applicable to appeals pending when it was enacted; and the well established rule of construction is invoked, "that a statute should have a prospective operation only, unless its terms show clearly a legislative intention that it should operate retrospectively." But the object of that rule is to avoid retrospective, and hence unconstitutional, or at least objectionable, legislation, the reason of the rule being thus stated in Endlich on Interpretation of Statutes, section 271: "Upon the presumption that the Legislature does not intend what is unjust rests the leaning against giving certain statutes a retrospective operation." To the same effect is the following language of Judge Roberts in Martin v. State, 22 Texas, 214: "Even in England, and in our sister States, where there is no express inhibition of retroactive or retrospective laws, the courts will, if possible, construe a law not to have been intended to have such effect, when thereby important rights will be defeated."

As the law, even when applied to pending appeals, is not retroactive within the meaning of the Constitution, we next inquire whether it be unjust to so apply it, that is, whether "important rights will thereby be defeated;" for otherwise the reason and object of the rule of construction invoked would seem to be entirely wanting."

That part of article 1331, Revised Statutes, which was repealed by

the amendment in question required the findings of the special verdict to be such as that nothing remained for the court but to draw therefrom the conclusions of law, the effect of which had been to cause many judgments to be reversed on appeal solely because a material fact put in issue by the pleadings, though conclusively proven, had not been specifically found by the special verdict. In the late important case of Silverman v. Gano, 39 Southwestern Reporter, 559, our Supreme Court, speaking through the present Chief Justice, in expressing their disapproval of this rule of practice, used the following language: "The law, in our opinion, is therefore technical, arbitrary, and unreasonable, and calculated rather to obstruct than to promote the administration of justice."

Soon after that opinion was delivered, and evidently in obedience to the suggestion therein made, the Legislature amended the law so as to abolish this unreasonable and unjust rule. The law was made to take effect immediately after its passage, the emergency clause reciting: "The fact that much inconvenience and intolerable delay accrue to litigants in this State, the tendency of which is to prolong litigation and crowd and burden the dockets of the courts," etc.

Concluding, therefore, that it was both within the constitutional power and just purpose of the Legislature to *at once* put an end to further "inconvenience and intolerable delay" by repealing a rule of procedure under which litigants were claiming rights, which, so far from being "just" and "important," deserved to fall with the "technical, arbitrary, and unreasonable" rule upon which they depended; we further conclude that the special rule of construction invoked should be discarded as inapplicable, and consequently that the general rule should govern which is thus stated and supported by citation of numerous authorities in Sutherland on Statutory Construction, section 482: "Where a new statute deals with procedure only, prima facie it applies to all actions—those which have accrued or are pending, and future actions."

The amendment under consideration prescribes but one rule by which we are to dispose of cases on appeal or writ of error, repealing the previous law in toto, without excepting pending cases from the operation of such appeal. It provides a new rule of procedure, without providing for the continuance of the old rule in any case. The general, if not universal, rule of construction in such cases is, that the courts have no power to make exceptions when none have been made by the Legislature. The rule applies also to criminal statutes. Shepard v. State, 1 Texas Appeals, 522, and authorities there cited.

Before the adoption of our present appellate system, certain defects in appeal bonds were held to be incurable, and fatal to the appeal; but in the act providing for the organization of the Courts of Civil Appeals, such courts were authorized to allow such defects, both of form and substance, to be cured by the substitution of new appeal bonds, and this provision of the law has been held to be applicable to appeals which had already been taken to and were then pending in the Supreme Court. Bank v. Bank, 85 Texas, 560.

This is but another illustration of the well settled rule, thus stated by Mr. Sutherland in the section quoted from above: "If before final decision a new law as to procedure is enacted and goes into effect, it must from that time govern and regulate the proceedings." Following this quotation is a statement of the rule which determines the manner and extent of the application of the new law to pending cases, which is to the effect that, unless an intention to the contrary is plainly manifested, all things done under the repealed law will stand; but our action in the case at bar does not conflict with this rule, since we have disturbed nothing. Indeed, we are forbidden by the new law from disturbing the verdict, in so far as appellant seeks to set it aside upon a ground that has been characterized as "technical, arbitrary, and unreasonable." We thus avoid what the Legislature, in response to judicial suggestion, undertook to prevent— "intolerable delay" and the "tendency to prolong litigation." There was as much reason for preventing further obstruction of justice and "intolerable delay" in pending as in future cases. Any other construction would impute to the Legislature an intention to continue to afflict existing litigants with evils it was easily within their power to prevent without injustice to anyone.

The second contention of the motion is, that in disposing of this appeal we failed to distinguish the defense of generating illuminating gas from that of the use of gasoline, as prohibited in the policy, citing the eighth page of appellant's brief for a statement of facts showing the generation of illuminating gas, which contains the answers of Mrs. M. A. Parish to questions propounded to her by appellant, showing, as we think, merely the method of lighting the lamp containing the French electric fluid, rather than the manufacture or generation of illuminating gas or vapor inhibited by the policy.

The other grounds of the motion are sufficiently covered by the conclusions already filed, and the rehearing is denied.

*Rehearing denied.*

Writ of error refused.