LONGWORTH v. STEVENS et al.†

(Court of Civil Appeals of Texas. San Antonio. Jan. 31, 1912.)

1. EVIDENCE (§ 398*) — PAROL EVIDENCE — MODIFICATION OF WRITTEN CONTRACT.

A written contract employing a firm to procure a purchaser of real estate does not prevent the partners from dividing the work of procuring a purchaser, and parol evidence that one partner was to do the outside work, and that the copartner was to do the office work, was not objectionable as varying the written contract.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1766–1771; Dec. Dig. § 398.*]

2. APPEAL AND ERROR (§ 690*)—RULINGS ON EVIDENCE—BILL OF EXCEPTIONS.

A bill of exceptions complaining of the admission or exclusion of evidence must set out the evidence objected to and the objections and thus show that the party complaining was damaged by the ruling complained of.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2897–2908; Dec. Dig. § 690.*]

3. BROKERS (§ 85*)—ACTIONS FOR COMMISSIONS—EVIDENCE—ADMISSIBILITY.

In a suit by a broker for commissions for procuring a purchaser of real estate, evidence that a sale was not made on a designated date because the property was not then properly indicated and shown on the ground was admissible to show that the broker could not make the sale which had to be postponed but not to show that the owner by his conduct prevented the sale.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. § 85.*]

4. BROKERS (§ 85*)—ACTION FOR COMMISSIONS—EVIDENCE—ADMISSIBILITY.

A broker, who bases an action for commissions on the cancellation of the contract of employment so as to deprive him of commissions which would have been earned if the contract had not been canceled, may show facts

proving that the land was sold after the cancellation and the facts relating to such sales.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. § 85.*]

5. APPEAL AND ERROR (§ 1052*)—HARMLESS ERROR — ERRONEOUS ADMISSION OF EVIDENCE.

Where a broker based his action for commissions on the wrongful cancellation of the contract of employment and calculated his commissions on the basis of prices for which the property was subsequently sold which were higher than those specified in the canceled contract, but the jury based a finding on the terms of the canceled contract only, the error, if any, in permitting evidence of the prices for which the property was subsequently sold was not prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4171–4177; Dec. Dig. § 1052.*]

6. BROKERS (§ 85*) — ACTIONS FOR COMMISSIONS—EVIDENCE—ADMISSIBILITY.

Where in an action by a broker for commissions the issue was whether the right of the owner to cancel the contract of employment was properly exercised, evidence of the money the owner expended in selling the land after the cancellation was properly excluded.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. § 85.*]

7. EVIDENCE (§ 253*)—ADMISSIBILITY—DECLARATIONS OF CONSPIRATORS.

Where an owner employing a firm to procure a purchaser of real estate and a partner conspired to cancel the contract and deprive the copartner of the benefit of the contract, declarations of the owner or the partner made before the consummation of the conspiracy and in contemplation thereof, were admissible against both.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 994–1002; Dec. Dig. § 253.*]

8. BROKERS (§ 82*)—ACTION FOR COMMISSIONS —ISSUES.

Where a partner in a firm employed by an owner to procure a purchaser based his action for commissions on a cancellation of the contract of employment by the owner pursuant to conspiracy between him and the copartner to deprive the partner of the benefit of the contract, questions whether the copartner carried out his contract with the partner, and whether the firm was dissolved before or after the cancellation, were immaterial.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. § 82.*]

9. BROKERS (§ 63*)—EMPLOYMENT—CANCELLATION OF CONTRACT.

An owner, employing a firm to procure a purchaser subject to the right to cancel the contract on specified conditions, may not cancel the contract pursuant to conspiracy with a partner to deprive the copartner of the benefit thereof and then rely on circumstances authorizing a cancellation.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. § 63.*]

10. TRIAL (§ 352*) — SPECIAL ISSUES — REQUESTS.

Where special issues requested by a party were written on the same paper, one immediately following the other, and some were palpably wrong, the court was justified in refusing to submit any of the issues.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 840–845; Dec. Dig. § 352.*]

11. BROKERS (§ 88*)—CONTRACT OF EMPLOYMENT—CANCELLATION—FRAUD.

Whether a contract employing a firm to procure a purchaser was canceled by the own-

er pursuant to a conspiracy with a partner to deprive the copartner of the benefit of the contract *held* under the evidence for the jury.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. § 88.*]

12. APPEAL AND ERROR (§ 1033*)—HARMLESS ERROR.

Where a partner in a brokerage firm based his action for commissions on a cancellation of the contract of employment by the owner pursuant to a conspiracy between himself and plaintiff's copartner to deprive the partner of the benefit of the contract, and the facts established the conspiracy and showed the damage to the firm from the cancellation, the owner could not complain of a judgment for the partner for one-half of the loss sustained instead of a judgment for the whole amount of the loss in favor of the firm.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4052–4062; Dec. Dig. § 1033.*]

13. CONTRIBUTION (§ 5*)—JOINT WRONGDOERS.

Where two persons fraudulently conspire to deprive another of the benefit of a contract causing damage to the latter, an action for the wrong could be prosecuted against one or both of the wrongdoers, and the court would not adjust the difference between the wrongdoers, since there can be no contribution between intentional joint wrongdoers.

[Ed. Note.—For other cases, see Contribution, Cent. Dig. §§ 6–9; Dec. Dig. § 5.*]

Appeal from District Court, Bexar County; Arthur W. Seeligson, Judge.

Action by E. E. Stevens against Parke R. Longworth and another. From a judgment for plaintiff, defendant named appeals. Affirmed.

E. B. Cocke and Carlos Bee, for appellant. T. H. Ridgeway, Jno. F. Onion, and Jno. F. Onion, Jr., for appellees.

FLY, J. This is a suit for commissions alleged to be due for services rendered in the sale of certain lands, instituted by E. E. Stevens against appellant and R. S. Menefee. It was alleged in the amended petition that a partnership existed between appellant and R. S. Menefee on June 10, 1908, and that on that date a written contract was entered into between appellant and said partnership in which appellant placed in their hands for sale 672 acres in and near the city of San Antonio, 572 acres being known as the Meerscheidt & Stieren Irrigation Gardens, and the other 100 acres adjoining the first tract; that he would furnish $500 for getting out advertising matter and furnish abstracts to purchasers, furnish all deeds and releases, and allow the partnership 20 per cent. on the acre lots and 25 per cent. on town lots as commissions, the final clause in the contract being as follows: "However, if for unforeseen reasons this contract should become impossible of performance in spirit and in fact to the satisfaction of said party of first part, or the sum of $5,000 cash has not been collected on or before January 1, 1909, this contract may, at the option of said first party, be canceled." It was alleged that the

partnership adopted the firm name of "Edgewood Addition Company," and said partnership at once opened an office and used their best endeavors to sell the land, and went to large expense to sell the same, and actually did sell portions thereof; that when it became evident that the whole of the land would be sold, and a large sum of money be earned by the partnership, appellant and Menefee wrongfully and fraudulently conspired to deprive the plaintiff of the commissions and profits, and agreed that Menefee should withdraw from the partnership and that the contract should be canceled by appellant, and a contract made between him and Menefee individually for the sale of the land, and that in pursuance of the conspiracy appellant did fraudulently and wrongfully and without cause declare the contract at an end and notified plaintiff of the cancellation; that Menefee withdrew from the partnership and appellant then contracted with him to sell the land. It was further alleged that if said partnership had been continued $60,000 net would have been realized as commissions. The prayer was as follows: "Premises considered (defendants having been heretofore duly served), plaintiff prays that upon final trial hereof he have judgment for and on behalf of said partnership against both of said defendants for all of the damages herein sued for, and, if this relief be denied, that he have judgment against the said Parke R. Longworth on behalf of said partnership for all of the said damages, and that the whole thereof shall be paid over, when collected, to plaintiff for and on behalf of said partnership, to be had and held subject to the orders of this court for proper distribution between the members of said partnership, plaintiff and defendant Menefee. Prayer is likewise made for all further legal and equitable relief to which plaintiff may be entitled in the premises for and on behalf of said partnership, or individually."

The cause was submitted to the jury on special issues, the first of which was as follows: "Do you or not find from the evidence that a conspiracy was entered into by and between Parke R. Longworth and R. S. Menefee to procure a cancellation of the contract between Longworth and Menefee and Stevens, and in pursuance of said conspiracy, if any, and for no other reason, Longworth fraudulently and in bad faith canceled the contract between himself and Menefee and Stevens?" The jury answered that question in the affirmative and found that the net earnings of the partnership would have been $18,000. On the two responses of the jury the court rendered a judgment in favor of Stevens as against Longworth for $9,000, and further that Stevens "take nothing as to defendant R. S. Menefee and that said Menefee go hence without day and recover his costs herein."

In conformity to the verdict of the jury, and from the facts, we find that the contract was canceled in pursuance of an agreement between appellant and Menefee, and that there was no reason for the cancellation under the authority of the clause in the contract permitting a cancellation.

[1] Over the objections of appellant, Stevens was allowed to testify that after the contract had been made between the partnership and appellant it was the understanding that "Mr. Menefee was to do the outside work, that is, showing the proposition; and I was to do the inside work, the office work." The objections were that the evidence varied the terms of the written contract. We fail to see the force of the objections. It was clearly the right of the partners to divide the work of the partnership between them, one performing one portion and the other another portion. One of the ends to be attained by a partnership is a division of labor whereby more can be accomplished than by an individual, and proof of the parts assigned to each partner would not vary a contract made by the partnership to perform certain services. The only question would be, Were the services performed, whether jointly or singly, by the partners? Appellant has cited eight authorities on his proposition, none of which has the least bearing on the question.

[2] The third assignment of error is based on a bill of exceptions which states that the court permitted E. E. Stevens "to testify to statements made by R. S. Menefee, one of the defendants, not in the hearing and presence of the defendant Longworth, relative to the cancellation of this contract and that Menefee stated he was looking out for No. 1," etc., etc. When a bill of exceptions is taken to the admission or exclusion of evidence, it must set out the evidence objected to, as well as the objections, and, while appellant endeavors to amplify the testimony set out in the bill of exceptions, he will be confined to the testimony that Menefee said he was looking out for himself. The bill fails to show the connection in which the testimony was admitted, except that it was relative to the cancellation. The only effect of the testimony would be a tendency to show that Menefee was taking care of himself after the cancellation of the contract, for he qualified what he said by stating that he "had worked Longworth on this proposition." The testimony did not tend to prove anything damaging to Longworth, but merely that he was being made a victim by Menefee. We overrule the assignment of error.

[3] The court did not err in allowing Stevens to testify as to his advertisement of a sale of the property on October 1, 1908, and that the sale was not made on that date because "the main road wasn't properly graded and the proposition was not properly staked," which, being changed into intelligible English, we understand means that the lots were not properly indicated and shown on the ground.

The evidence was admissible as tending to show that Stevens was endeavoring to forward the sale, by advertisement and otherwise, as he had been charged with taking no steps to sell the land, and the court permitted it for that purpose alone, as stated in the bill of exceptions. The testimony was not for the purpose of showing that appellant had by his conduct prevented the sale, but to show that it was thought by Stevens that the sale could be had on October 1, and that he was mistaken and it had to be postponed. The testimony was properly admitted.

[4, 5] The suit in this case was based on the cancellation of a certain contract but for which certain lands would have been sold and certain commissions obtained, and in order to make proof of those allegations it was necessary and proper to show facts that tended to prove that the lands were sold after the cancellation at certain prices, from which under the contract certain commissions would have been earned by Stevens. It was not error, therefore, to admit proof of the advertisement of the land for sale by the Menefee Realty Company, stating that a number of acres had been sold, of the amount for which lots were sold, and that from such sales the commissions would have been certain amounts. Stevens claimed that he could have sold the land under the contract if it had not been canceled, and testimony that it was sold in a short time after the cancellation was strongly confirmatory of his claim. That Stevens calculated his commissions on the basis of prices for which the lots sold, which were higher than those named in the canceled contract, did not injuriously affect appellant, for the reason that the jury based their finding on the terms of the canceled contract and found the damages to be not a fourth of what was claimed by Stevens. It cannot be successfully contended that Stevens obtained a verdict for more than would have been realized by him if the lands had been sold under the contract between appellant and Stevens and Menefee, and it follows that the jury was not misled by any testimony as to prices on the land other than those named in the contract. The amount of the award for damages was fully sustained by all the evidence.

[6] The main question in this case was as to whether the right to cancel the contract was properly exercised under the terms of the clause permitting cancellation, and testimony as to the money that Longworth was forced to expend in selling the land after the cancellation of the contract had no bearing on the issues in the case and was properly excluded. If the contract was improperly canceled, Stevens could not be affected by any expenditures made by appellant after the cancellation; if the contract was improperly rescinded, the money spent after such rescission could in no manner affect the interests of Stevens. This is apparent and too plain for discussion.

[7] The tenth assignment of error assails the action of the court in permitting Henry Rullman to testify that a week before October 1, 1908, Menefee had said that he intended to make a change and get Stevens out and run the business himself. The witness also stated that a day or two afterward appellant said he intended to get Stevens out and let Menefee have the business. A conspiracy to cancel the contract and to oust Stevens and deprive him of the benefits of the contract was alleged in the petition, and any declarations made by either of them in pursuance of the common design was admissible against the others. The rule is that the conspirators have jointly assumed to themselves as a body the attribute of individuality so far as regards the prosecution of the common design, thus rendering whatever is done or said in furtherance of that design a part of the res gestæ and therefore the act of all. There was proof tending to show the conspiracy alleged, and the acts and declarations of each conspirator made before the consummation of the design, and while it was in contemplation, was admissible against all. San Antonio Gas Co. v. State, 22 Tex. Civ. App. 118, 54 S. W. 289; Sullivan v. Fant, 51 Tex. Civ. App. 6, 110 S. W. 507.

[8, 9] The eleventh, twelfth, fourteenth, and sixteenth assignments of error complain of the action of the court in refusing to submit the following issues to the jury: "(1) Did Stevens carry out and perform his duty under the contract with Menefee? (2) Did Menefee and Stevens dissolve their partnership and notify Longworth of it before Longworth gave the written notice to each of them that he had canceled his contract? (4) Could and would Menefee and Stevens and were they carrying out their contract with Longworth in spirit and in fact at the time he gave notice of his cancellation of the contract? (6) Had Menefee and Stevens or either of them furnished or arranged for, or did they or either of them intend to arrange for or furnish, an automobile or automobiles to to be given away, as in the contract provided for, at the time Longworth canceled his contract?" The first issue was properly rejected because it was an irrelevant matter so far as appellant was concerned. He had nothing to do with any contract between Stevens and Menefee.

If, as was submitted in the first issue presented by the court, the jury found that a conspiracy was entered into between Longworth and Menefee to procure a cancellation of the contract, and that in pursuance of that conspiracy and for no other reason Longworth fraudulently and in bad faith canceled the contract between himself and Menefee and Stevens, it was immaterial whether the partnership was dissolved before or after the cancellation took place. If the cause for the cancellation was founded in fraud and bad faith, it could not have been based on the clause of the contract which authorized the

cancellation of the contract, but his action to render it legal and binding must have been actuated by good faith and an honest purpose, and, when the jury found that appellant acted in bad faith in rescinding the contract, the heart and essence of the case was met and no other issue could arise. It may have been that such a state of facts, such as a dissolution of the partnership and a lack of co-operation between the partners, would have justified a cancellation, yet, if that state was brought about by a conspiracy between appellant and Menefee, appellant was not authorized to rescind the contract. He and Menefee could not create the circumstances that would meet the clause authorizing the cancellation and then profit by such circumstances, and if the issues had been submitted and the jury had found that the partnership had been dissolved before the cancellation, and that Stevens and Menefee at the time of the cancellation were not in a position to carry out the contract, or if they had found that the partnership had or had not furnished an automobile, those findings could in no manner have relieved appellant from the force and effect of the finding that he and Menefee had conspired to defraud Stevens and that the cancellation had been made in bad faith. That finding covered every issue in the case, "as the waters cover the sea."

It is exceedingly doubtful as to whether appellant has done what he should have done to obtain a hearing on the refusal of the court to present his issues, for it is said in Railway v. Cody, 92 Tex. 632, 51 S. W. 329: "We are of opinion that a party who desires to review the action of the court in refusing a submission upon special issues should except to the ruling of the court and take a bill of exceptions thereto. Such a request is neither a charge given nor a requested charge refused, and it stands upon a very different footing." Appellant in no way expressed dissatisfaction in the lower court with the action of the court, except by general exception and notice of appeal. It is true that the language quoted was used in a case in which the court absolutely refused to submit the case on any special issues, but we fail to see the distinction between a refusal to submit special issues when some have been submitted and a refusal to submit any at all. We have, however, given appellant the benefit of the doubt and considered the assignments. Insurance Co. v. Shearman, 17 Tex. Civ. App. 456, 43 S. W. 930.

[10] The court was justifiable on another ground in refusing to submit the special issues requested by appellant. The issues were all written on the same paper, one immediately following the other, and some of them were so palpably wrong that appellant does not complain of their refusal, namely Nos. 3 and 5. The sixth was not submitted for the sufficient reason that Longworth stated that the clause as to giving automobiles to certain purchasers was illegal and was abandoned.

Those three issues being coupled with the others, the court was under no obligation to separate the good from the bad, but was justified in refusing the whole of them. This is true of requested charges and we see no reason why the rule should not be applied to special issues.

[11] We are of the opinion that the jury could, from the circumstances in evidence, find the existence of a conspiracy. Both appellant and Menefee told Rullman, if he is to be credited, that Stevens was to be turned out, and the agency to sell the land would be given to Menefee. Menefee rented an office in his own name and advertised the land in his name. Afterwards Menefee wrote a letter to Longworth that he intended to dissolve the partnership, speaking in a very harsh manner of Stevens, and appellant soon after gave notice of the cancellation of the contract, and, when one of the notices was handed to Menefee by appellant, he asked Menefee if it was all right and he smilingly assented. Appellant went out and was immediately followed by Menefee, and shortly thereafter a man who inquired about the Edgewood addition was turned over to Menefee by appellant. Three days afterwards the land was advertised by the Menefee Realty Company, which advertisement had been prepared before the cancellation of the contract. A formal contract was made with Menefee by appellant within four days from the date of the cancellation of the partnership contract, and Menefee sold the Edgewood addition property, and he admitted receiving $17,013.77 commissions over and above expenses. These circumstances were sufficient to justify the submission of the question of conspiracy to the jury. The finding of the jury is binding on this court.

[12] The evidence of Menefee was sufficient to show that he had collected over $17,000, and that $20,000 worth of the land was sold to his brother besides, the commission on which was not included in the sum mentioned. That evidence, as well as other testimony, justified a verdict for $18,000 as the total damages. One half of that sum, under the partnership agreement, belonged to Menefee, the other half to Stevens, and yet the sum and substance of the contention by appellant is that the court erred in rendering judgment in favor of Stevens for $9,000, instead of in favor of the partnership for $18,000. What the difference to appellant can be is not attempted to be shown, nor could it be demonstrated that appellant was injured by the manner in which the judgment was rendered. Stevens was entitled to that much and appellant cannot object because Menefee did not get judgment for the other half. The case of Railway v. Thompson, 102 Tex. 89, 113 S. W. 144, 19 Ann. Cas. 1250, is cited by appellant in support of his contention that there was no

basis in the verdict for the judgment of the court, but it does not support it. In that case the jury did not find the existence of a conspiracy, and the court held that, as no conspiracy was found by the jury, a verdict against one of the parties could not be sustained because, unless there was a conspiracy, there was no cause of action. No such state of case is presented by this record. Here the jury found the existence of the conspiracy, and the court had the authority to give Stevens his part of the damages, instead of entering judgment for $18,000 in favor of the partnership, and then dividing it so as to give Stevens one-half. Appellant did not seek to recover over against Menefee for one-half of any amount due the partnership, but made common fight with him against Stevens.

[13] The answer to the question, propounded by appellant, "Why did not the court compel Menefee to pay back the one-half of the amount he had collected from Longworth?" is that, being found to be intentional joint wrongdoers, there could be no contribution between them, and, if there could have been contribution, appellant could not recover because he did not ask that the money he had paid to Menefee be repaid to him, for to have done so would have been to have admitted the conspiracy. The jury found that appellant and Menefee fraudulently conspired to deprive Stevens of the benefits of the partnership contract, and that finding made each one of them a deliberate, intentional wrongdoer and the law will not lend itself to adjust their differences. The suit could be prosecuted against one or both of them and a recovery against one did not in any manner depend upon a recovery against any other. Giddings v. Baker, 80 Tex. 308, 16 S. W. 33.

What may have occurred between Stevens and appellant in another suit, in which appellant sought to have his case tried in a federal court and it was dismissed from that court, can be of no interest in this suit, which as stated by appellant is a new suit, and no plea to the jurisdiction was filed, nor attempt to remove the cause to the federal court was made, and there is no basis for the consideration of any such question.

The judgment is affirmed.