TEXAS REFINING CO. v. ALEXANDER.
(No. 1297.)

(Court of Civil Appeals of Texas. Amarillo. March 6, 1918. Rehearing Denied March 20, 1918.)

1. TRIAL ☞203(1)—REQUESTED SUBMISSION OF ISSUES — DUTY OF COURT TO SUBMIT PROPER ISSUE.

Although the fact that some 14 issues in all were requested and were on one paper when presented to the trial court will not, as a rule, support an assignment based on their refusal, yet if the issues so presented were duly pleaded by the party and the issues called attention to an affirmative defense, even though defective, it will be sufficient to require the court to submit a proper issue thereon.

2. APPEAL AND ERROR ☞2—STATUTES—INDORSEMENT BY TRIAL COURT ON REQUEST FOR INSTRUCTED VERDICT.

Acts 35th Leg. c. 177 (Vernon's Ann. Civ. St. Supp. 1918, art. 1974), as to effect of court's indorsement on a request for instructed verdict, applies to a case tried before its passage, and appealed about the time the act went into effect, since the act affects the remedy only in the appellate court.

3. STATUTES ☞267(2)—RETROACTIVE EFFECT —PROCEDURE.

When a new statute deals with procedure only, prima facie it applies to all actions, those which have accrued, or are pending, and future actions.

4. MASTER AND SERVANT ☞88(3)—INDEPENDENT CONTRACTOR.

The mere use by one doing a piece of work of material or employés primarily employed by the company having the work done will not, of itself, make the company liable for such employés' acts, unless it had the immediate control and management of the work done.

5. MASTER AND SERVANT ☞88(3)—INDEPENDENT CONTRACTORS.

The mere fact that a machinist, or the machine shop sending him to do a piece of work for a corporation, was to receive pay for the work at so much an hour, or that it was to be paid for by the job, is not conclusive on the issue whether he was an employé of the corporation.

6. MASTER AND SERVANT ☞88(3)—INDEPENDENT CONTRACTOR.

The question as to whether the relation of independent contractor exists as to a piece of work is usually determined on the issue as to

who is in charge and control of the work and who determines the method of doing it.

7. MASTER AND SERVANT ☞88(3)—SERVANTS LOANED TO INDEPENDENT CONTRACTOR.

On the issue whether a company is liable to one as an employé when he is injured, in doing work for it, by a company employé assisting him, the true test is to ascertain who directs the movements of the person committing the injury; the fact that the company is the primary employer of the persons assisting in the work not necessarily making them its servants.

8. MASTER AND SERVANT ☞284(2)—QUESTION FOR JURY—INDEPENDENT CONTRACTOR.

In action against a company by a machinist injured while doing a piece of work for the company by one of its servants assisting him, the issues that the machine shop sending him was his employer, and undertook to do the specific work; that the machinist, for it, was in control of the work, including the company's employés loaned to assist him; that the company was interested only in the result of the work, etc.—were for the jury.

9. MASTER AND SERVANT ☞297(2)—VERDICT —INCONSISTENT FINDINGS.

An affirmative answer to the issue whether plaintiff was contributorily negligent, with a negative answer to the issue whether said negligence proximately caused or contributed to cause his injury, under the court's definition of proximate cause, held a contradictory answer requiring verdict for plaintiff to be set aside.

10. MASTER AND SERVANT ☞358 — WORKMEN'S COMPENSATION ACT.

An election of one to take under the Employers' Liability Act (Acts 33d Leg. c. 179 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz]), in case he is an employé, is sufficiently shown by his making claim thereunder and prosecuting it to final adjudication, so that if he is an employé within part 1, § 3, of the act, he has no right of action against his employer, if the latter is a subscriber under the act, irrespective of whether the employer gave him notice of being a subscriber.

11. MASTER AND SERVANT ☞367 — WORKMEN'S COMPENSATION ACT—"EMPLOYÉ."

Under Employers' Liability Act, pt. 4, § 1, excepting casual employés from the definition of employés, and pt. 2, § 6, excepting the employés of independent contractors on a contract "merely auxiliary and incident to" the business, a machinist sent by a machine shop to do certain work on a machine was not an "employé" of the company owning the machine.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Employé.]

12. MASTER AND SERVANT ☞416 — WORKMEN'S COMPENSATION ACT—EFFECT OF DENIAL OF COMPENSATION.

Denial by the Industrial Accident Board of a workman's claim for compensation on the ground that, as a casual employé, he was not an employé within the Employers' Liability Act had the effect of remitting to their common-law rights both him and the company he claimed to be liable for his injury; the provisions of the act, depriving the employer of common-law defenses of contributory negligence, fellow-servant negligence, and assumed risk, applying only in suits by one who is an employé entitled to invoke the act.

13. MASTER AND SERVANT ☞287(2) — QUESTION FOR JURY.

Whether an improvised battering-ram used to drive a crank pin into place in an upright engine was an instrumentality requiring special skill in its operation by the helper guiding it held, in suit by machinist injured by its operation, a question for the jury.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Hunt County; Wm. Pierson, Judge.

Action by J. M. Alexander against the Texas Refining Company. From judgment for plaintiff, defendant appeals. Reversed and remanded.

Harry P. Lawther, of Dallas, for appellant. B. Q. Evans and W. A. Shields, both of Greenville, and Carden, Starling, Carden, Hemphill & Wallace, of Dallas, for appellee.

HUFF, C. J. Alexander sued the Texas Refining Company for damages occasioned by the loss of a finger, and recovered upon the trial $2,000. He alleged that on or about the 28th day of October, 1915, he was in the employment of the refining company, assisting in repairing a part of their machinery, etc. The negligence alleged is that the refining company employed the men to help in the work, and without his knowledge employed incompetent men, who were not experienced in that line of work, which was the proximate cause of the injury, and also alleged that the men so employed were negligent. The answer will not be set out at this place, but the issues presented by it will be noticed in the course of the opinion. The Texas Refining Company was engaged in the manufacture of lard and cooking oil and in the making of ice. A crank pin in an upright engine in use in its plant in Greenville, Tex., became loose, necessitating taking it out, the making of a new pin, and putting it in its proper place in the engine. One McMackin was a machinist in the city, doing business under the name and style of the Model Machine Shop. Alexander was working for McMackin on a percentage basis; that is, he received 50 per cent. of half of the compensation for any job of work that McMackin obtained, and which was turned over to Alexander, and after the work was done and expenses paid they divided the profits.

Some portions of the appellee's testimony seem directed to an effort to show that the Model Machine Shop lent or hired him to appellant to work on the engine, and under appellant's control and management that his services were to be paid for by the hour, while from other portions of the testimony the inference may be drawn that the "job" was that of the shop, and that he controlled and directed the entire work. The testimony of all the other witnesses shows the contract was made with McMackin, or the shop, to do the designated work; that it was to be paid for as a complete piece of work, and the Model Machine Shop was so paid upon the rendition of its bill; that the appellant did not manage, control, or direct the appellee, but that he controlled the work, using his own tools, manner, and method of doing the work; that in doing the work he was representing the Model Machine Shop, and at his request the appellant, through its engineer, lent to him helpers who, while helping,

were under the control of appellee, In doing the work all the necessary tools and appliances for the work were furnished by the Model Machine Shop, unless it was the piece of steel out of which the pin was made. This piece of steel was taken to the shop and fashioned for the purpose of inserting it into the hole bored by appellee.

It is also shown that appellee chipped off the parts of the machine necessary to get the old pin out, and the helpers, negroes, with a sledge drove the pin out, and after it was out, with a boring machine belonging to the shop the appellee enlarged the hole; one of the negroes turning the machine. After the hole was completed to suit the appellee he took the necessary measurements and the steel for the pin to the shop and finished it so as to make it the proper size for the hole. Upon return to the plant the new pin was inserted in the hole and was driven in, under the direction of appellee, to within about an inch of the distance it should go. This was accomplished by Alexander holding a copper hammer on the head of the pin, the negro striking this with a sledge hammer. It was then found that in order to drive it up it would require more force. Carley, the engineer of appellant, was in the engine room asleep, and appellee woke him up, stating that he could drive the pin no further with the sledge, and that he would have to have a battering-ram, and asked for something that could be so used. Carley told him there was some railroad iron which he could use, and told the negroes where it was. This railroad iron weighed about 400 pounds and was about 20 feet long. The engine, where the pin was being driven was about 8 feet from the brick wall of the building, and it was found necessary to cut a hole in the wall in order to pass one end of the iron through it for leverage to use the iron as a battering-ram. Appellee in one place seems to say Carley cut the hole in the wall; all the other witnesses but himself say that he himself measured it and directed the negroes to cut the hole. One end of the iron was run through this hole, and the one next to the machine was suspended by a rope from above. The appellee says Carley directed this arrangement. All the other witnesses state appellee did so himself. Carley says that he was not in there when it was rigged up, and was not there until after they had begun to use it as a battering-ram. Appellee admits in one place that he did assist and direct the arrangement of the ropes suspending the iron. In using the rail there were three negroes outside the building for the purpose of propelling the iron and one on the inside at the rope to hold and guide the iron so as to strike the head of the pin. When they first began using the iron a brass hammer was held against the head of the pin and the iron struck this. The handle fell out of the hammer, and appellee picked up a piece of shafting $5\frac{1}{2}$ inches long and $2^{15}/_{16}$

inches in diameter, holding one end against the pin with his hand, while the negroes swung the ram against this piece of shafting. There were some blows struck with the ram after which a blow missed and caught the finger of appellee, mashing it against the plate so that amputation was necessary. The negroes on the outside, swinging the ram, could not see appellee or the pin. After they had begun to use the iron, Carley states, and the other evidence shows, that he was present when the ram struck appellee's finger, holding a light so the work could be seen. Appellee, in some of his testimony, would seem to state that Carley was directing the work. All the other witnesses say appellee was doing so. The negroes were in the employ of appellant, and appeared to be only ordinary laborers, and were perhaps not skilled mechanics. At the time of the contract or employment of appellee, he asked Carley if appellant could give him helpers. Carley stated he would be there, and would furnish him help. Carley was the engineer at the plant, working for it in that capacity; the negroes were helping appellee under the arrangement so made.

This statement of the facts we judge to be sufficient for the purpose of considering the assignments.

The appellant requested the trial court to instruct a verdict for it, and presents a number of assignments, based on the refusal of such instruction.

The fourth paragraph of the court's charge, instructed with reference to the duty of a master to furnish a reasonably competent fellow servant, and after certain definitions submitted special issues to the jury, the first being, was the helper Stinson (who was the negro guiding the ram at the time of the injury) incompetent and wanting in required qualifications for assisting plaintiff in the work in hand? Second, was the defendant guilty of negligence in furnishing the helper? Third, was the helper furnished and the negligence of the defendant the proximate cause of the injury? The jury answered all of these questions in the affirmative. The appellant requested several issues to the effect, Was appellee, at the time of the injury, in the employment of the Model Machine Shop? Was he paid for his services by that shop, by commission on the net profits? Was he doing the work he was engaged in according to his own methods and means and with his own choice of tools? While doing the work, was he under the control or direction as to method, means, and manner of work as to tools used by the Texas Refining Company? Were the employés who assisted him in his work under his direction and control in so far as said work was concerned? Did he direct the manner and use in which the railroad rail was used as a battering-ram? These several issues the court refused, and submitted no issues on the points presented.

The appellant also objected to paragraph 4, because it assumed that the relation of master and servant existed between appellant and appellee, and also objected to issues 1 and 2, for the reason the evidence established that appellee was in the employ of the Model Machine Shop, which was an independent contractor to do the specific work; that he was pursuing his own means, methods, and manner of work; that the particular work was to be paid for to the shop, which in fact was so paid in a lump sum, and that appellant's interest in the work was only in the final result. That the duty to furnish competent fellow servants is an obligation imposed by common law upon the master to his servant; that in this case the relation of master and servant did not exist. The appellant, in its answer, pleaded independent contract by the Model Machine Shop; that appellee was in its employ and under its direction when he was performing the particular work; that he adopted his own methods and means, and that the entire work was under his control and management; that the negroes were lent appellee for the purpose of helping him, and were under his control, management, etc. Appellants took a bill of exceptions to the action of the court in refusing to submit the special issues so requested. The court, however, indorsed on this bill his approval with the following explanation:

"The question as to whether the work being done by plaintiff was done under an independent contractor, an employé of defendant, was, by counsel for defendant and by counsel for plaintiff, repeatedly stated to be a matter for the court to pass on, and throughout the trial the case proceeded on this understanding."

[1] At this time we will notice the qualification made by the trial judge on the bill. All the record in this case suggests that the appellant urged in the court below, as well as in this court, that the evidence did not establish the relation of master and servant, and as a matter of law the court should so hold; but the court did not think so, and submitted issues of fact for the jury's findings. The appellant filed written objections to the assumption by the court of the existence of the relation of master and servant between appellant and appellee, and presented them to the court before his charge was given to the jury; not only that, but it requested, in writing, issues for findings by the jury which, if they had answered in the affirmative, would have shown no such relationship existed, and these issues were also presented by its answer, specially setting them out. The statute relating to special issues provides, where issues are not submitted to a jury and no finding thereon, if necessary to support the judgment, the appellate court will presume such finding by the trial court, if there is evidence to support the finding, unless there is a written request for a finding on such issues by a jury presented to the trial court. In this

case appellant objected to such finding by the court, and also requested in writing that such issue be submitted to the jury for their finding. But some 14 issues in all were requested, and were on one paper when presented to the trial court. This, as a rule, will not support an assignment, based on their refusal. If, however, the issues so presented were duly pleaded by the party, and the issue called attention to an affirmative defense, even though defective, as we understand the rule, it will be sufficient to require the court to submit a proper issue thereon. Roberts v. Houston Motor Co., 188 S. W. 257; Olds Motor Co. v. Churchhill, 175 S. W. 787.

As to the bill of exception to the action of the court in refusing to instruct a verdict for appellant, the bill fails to show affirmatively that it was presented to counsel for appellee, but does show it was submitted to the court at the proper time and before his charge was read to the jury. However, we believe most of the courts hold it to be necessary that the bill be presented to the opposite party for examination before the charge of the court is read to the jury, and that this showing is required as a prerequisite to the consideration of an assignment based on such refusal. This court has held to a different view. Sanger v. First National Bank, 170 S. W. 1091. We have also held that a request for a peremptory instruction is not a charge within the meaning of our statutes; that it is more in the nature of a motion for a verdict, a refusal of which no bill of exception is required, under article 2062; and whether it be called a demurrer to the evidence, or motion, or an instruction, the effect is the same, and calls upon the court to say as a matter of law whether there is any evidence for the jury to pass upon. Under our statutes defining a charge, only issues of fact can be submitted to the jury. If there are no disputed issues of fact, there is nothing to submit. Such a request is in no sense under the statute a charge, whatever it may have been at common law. Loving v. Warren County, 77 Ky. (14 Bush) 321. But all the Courts of Civil Appeals, it appears, except this one, hold to the contrary.

[2] Whether we are right in our views or not, if the request for an instructed verdict is a charge, all that is now necessary under the act of the Thirty-Fifth Legislature (page 389), is for the court to make his indorsement thereon, and all else is presumed; that is, with reference to its presentation to the court, time, etc. This case was tried before the above act was passed or went into effect, and it went into effect about the time the case was appealed. This act only affects the remedy in this court. We believe it to be the rule, if, pending an appeal, the law is changed with reference to procedure in this court, the appellate court is required to dispose of the case under the law as it exists at the time of deciding the case.

[3] When a new statute deals with procedure only, prima facie it applies to all actions, those which have accrued, or are pending, and future actions. The amendment takes the place of the former statute, and in effect repeals it. We would therefore have no law governing us in considering the charge other than the present statute. This enactment by the Legislature appears to us to be reasonable, and it further appears to us would not be unjust or unreasonable to apply in this case. The trial judge had ample notice of appellant's contention in the court below, and was given the opportunity to pass upon the question presented, as is clearly shown by this record. A technical omission in the bill would defeat a consideration of the question in this court. Estoppel is invoked because of such omission. If all the requirements contended for had been complied with, the trial court could not have been given a more certain notice of appellant's position upon the trial than was given, and shown to have been given by the bill presented. We believe it is not only reasonable, but just, to consider the assignment presented. Phœnix Ins. Co. v. Shearman, 17 Tex. Civ. App. 456, 43 S. W. 930; Id., 43 S. W. 1063; Railway Co. v. Mussette, 86 Tex. 708, 26 S. W. 1075, 24 L. R. A. 642; Odum v. Garner, 86 Tex. 374, 25 S. W. 18; Garce v. Buffington, 25 S. W. 317. We shall therefore consider the assignments presented, based upon the refusal of an instructed verdict, or objection to the charge of the court, and the refused specially requested issues.

Very high authority has said, in effect, "No man can serve two masters." This principle is fundamental in the law of master and servant. There cannot be more than one responsible superior for the same subordinate at the same time and in the same transaction. When it is conceded one is the servant of one of two or more persons, it is sometimes difficult to tell who is the master. In modern industry the line of cleavage is often difficult of ascertainment. Before one is the master he must have the right and power to control the servant in the particular work in hand, however temporary may be that right and power. In this case either the Model Machine Shop or appellant was master to Alexander when he was injured. They were not both such at that time. The cause of action alleged by appellee depends upon establishing that appellant was at that time master in that particular work. If not, there was no duty on it to use ordinary care to furnish competent helpers. It is said by Street on Personal Injuries, §§ 111, 112:

"No better test can be applied than to say that the relation of master and servant exists where the master retains or exercises the power of control in directing, not merely the end sought to be accomplished by the employment of another, but as well the means and details of its accomplishment; 'not only what shall be done, but how it shall be done.'"

Our Supreme Court said:

"It is now the well-established doctrine in Europe and the general prevailing rule in this country that the ordinary relation of principal and agent and master and servant does not subsist in the case of an independent employé or contractor who is not under the immediate direction of the employer." Cunningham v. Railway Co., 51 Tex. 503, 32 Am. Rep. 632; Railway Co. v. Meador, 50 Tex. 87.

[4] The mere use by appellee of material or employés primarily employed by appellant to do the work undertaken by him would not of itself make the company liable for their acts, unless it had the immediate control and management of the work done; and, as said in the Cunningham Case, supra:

"To hold otherwise would virtually forbid parties to construct works of improvement, or perform many other acts except by their own servants, unless at great peril for liability for actions of others over whom they have no immediate control."

The Supreme Court again announced substantially the same rule in Wallace v. Southern Oil Co., 91 Tex. 18, 40 S. W. 399. The case of Walker v. El Paso Electric Co., 103 Tex. 259, 126 S. W. 262, and 118 S. W. 554, does not announce a different rule.

[5-7] The mere fact that the appellee, or the Model Machine Shop, was to receive pay for the work for so much per hour, or that it was to be paid for by the job, is no conclusive, either one way or the other. Such facts may be entitled to some evidentiary value. These questions are usually determined on the issue as to who is in charge and control of the work, and who is left to determine the method in which it is done. Thompson on Negligence, vol. 1, §§ 629, 630, et seq. The true test in such cases is to ascertain who directs the movements of the person committing the injury. Higgins v. Western Union Telegraph Co., 156 N. Y. 75, 50 N. E. 500, 66 Am. St. Rep. 537; Cotter v. Lindgren, 106 Cal. 602, 39 Pac. 950, 46 Am. St. Rep. 255; Labatt on Master and Servant, vol. 1, §§ 18, 19, et seq., notes. The fact that appellant was the primary employer of the negroes who operated the battering-ram does not necessarily make them its servants at the time the injury was inflicted. The statement made by Judge James with reference to this subject is as we understand the generally accepted rule; that is:

"The rule, generally adopted, is that when a master loans or hires his servant to another, the test of fellow servant is whether in the particular service the servant continues liable to the direction and control of his master, or becomes subject to the party to whom he is loaned or hired. Munsie v. Springfield Breweries Co., and cases there cited; 200 Mass. 79, 85 N. E. 840."

Judge Fly in the same case recognizes the same rule. He says:

"If, with the knowledge and consent of an employé, he is placed in charge of another to perform his work, he would thereby, at least temporarily, pass from the control of one master to that of another, as was held in the case of Hasty v. Sears, 157 Mass. 123, 31 N. E. 759, 34 Am. St. Rep. 267." Wallace v. El Paso Electric Co., 118 S. W. 554; Wolfe v. Mosler Safe Co., 139 App. Div. 848, 124 N. Y. Supp. 541, and authorities above cited.

[8] This case, we think, clearly raises the issue that the Model Machine Shop undertook to do the specific work, and that Alexander was in its service; that it furnished the material and work; that Alexander, for it, selected the instrumentalities with which to do the work; that he directed and controlled the manner in which it was done and all those who assisted in the work; that appellant did not control the work as it progressed, but was only interested as to the final result of the work;' that appellant loaned, with their consent, its employés to appellee to assist him in the work; and that he controlled them in their duties with reference thereto. We, perhaps, would not be justified in holding as a matter of law that there are no facts to the contrary, but we think, under the motion for new trial, pointing out the error of the court in the particulars above stated, that the court should have granted a new trial, and therefore we believe the case should be reversed and remanded for the reasons above stated.

[9] The trial court submitted issue No. 4:

"(a) In the manner and by the means by which the plaintiff was performing the work, was plaintiff guilty of contributory negligence, as defined in paragraph 3 hereof? (b) If yes, then did said negligence of the said J. M. Alexander proximately cause, or contribute to cause, his injury, as to the term 'promimate cause' has been defined to you?

To (a) the jury answered "Yes"; to (b) "No."

Paragraph 3 is as follows:

"Contributory negligence is negligence on the part of the person injured combining and concurring with negligence of the person inflicting the injury complained of and contributing to such injury, and but for which the injury would not have occurred."

Even though appellant was master and was negligent in failing to employ competent helpers, which negligence proximately caused the injury, we cannot see how appellant at common law could recover if he himself was negligent, which negligence caused, or contributed to cause, the injury, "and but for which the injury would not have occurred."

The definition of proximate cause given by the court is stated to be that which, in a natural and continued sequence, "unbroken by any new or independent cause," causes the injury, etc. Now, the natural sequence from employing an incompetent helper, the jury found, was negligence, and caused the injury. But they further found this injury would not have happened but for the new and intervening negligence of appellee. The answer of the jury is contradictory, and no judgment could be rendered on the verdict. The court should have set aside the verdict.

We will at this point consider appellant's assignment No. 6. The appellant, in answer to the petition, pleaded that it was a member and subscriber under the Texas Employ-

ers' Liability Act, passed by the Thirty-Third Legislature, alleging the necessary facts as to the number of its employés, etc.; that it held a policy in the Ætna Life Insurance Company; that the policy appellant so held provided for payment of the compensation provided for in the act above named; that appellee presented his claim for compensation to the Industrial Accident Board, which made its final ruling, to the effect that he was not entitled to compensation under the act. The facts show appellant was such member and subscriber as alleged, and had taken out a policy with the insurance company, as alleged, which was in force at the time of the injury. After the injury Alexander filed his claim for compensation under the act for personal injury while in the employ of appellant. The date of such claim and filing is November 10, 1915, after the accident on August 27, 1915. On the 22d day of December, 1915, the board entered an order to the effect that, it appearing that Alexander was not in the regular employ of appellant, in a capacity covered by the policy, and that the claim is without merit under the Employers' Liability Act, therefore the board adjudged and ordered that the claim be disallowed. The answer and request of appellant sought the judgment of the trial court as to whether it would take further cognizance of the action, and prayed that the cause be dismissed.

[10] If the appellee was an employé of appellant, within the meaning of the Employers' Liability Act, under section 3, part 1, of the act, appellee would have no cause of action against appellant, who was a subscriber under the act. The fact that no notice was given by appellant to appellee that it was a member of the association, or did not so plead and prove, we believe not to be material, when it is shown by the pleading and the proof that the appellee made his claim under the act and prosecuted that claim to final adjudication before the board. This, we think, sufficiently shows he accepted as such employé, provided the board find that he fell within the class of employés defined in the act. In the case of Rice v. Garrett, 194 S. W. 667, Judge Boyce, speaking for this court, said:

"And we have concluded that the employer, in order to show that the employé has elected to take under the compensation act, should show that the employer has given notice required by the act, or the employé has in some manner waived it."

[11] We think in this case the pleadings and evidence show appellee waived the formalities stated by filing his claim with and prosecuting to judgment the claim before the board. However, we believe the appellee was not an employé within the definition of section 1, pt. 4, of the act, and not entitled to compensation under the act. That section in part is as follows:

"The following words and phrases, as used in this act, shall, unless a different meaning is plainly required by the context, have the following meaning: 'Employer,' shall include the legal representatives of any original employer. 'Employé' shall include every person in the service of another under any contract of hire, expressed or implied, oral or written, except one whose employment is but casual, or is not in the usual course of the trade, business, * * * or occupation of the employer."

[12] The board, in its findings, evidently determined that appellee was only a casual employé, and not employed in the usual course of the trade or business of the employer. The appellant relies on section 6 of part 2, referring to employés under an independent contractor or subcontractor, which in effect provides the association shall pay to such employé compensation which would be payable under the act, etc. The section shall not apply to independent or subcontractors on any contract which is merely auxiliary and incident to and is not a part or process in the trade or business carried on by the subscriber. If the appellee was working for an independent contractor at the time of his injury, it "was merely auxiliary and incident to," and was not part of, the "trade" or "business." We believe the finding of the board and the award made had the effect of remitting the parties to their common-law rights, both employer and employé.

Under this act and the facts showing only casual employment of appellee by the employer in auxiliary or incidental work to the business in which he could not become a subscriber under the act so as to obtain relief from his common-law liability, it is our view that the purpose of the act was not to deprive the employer of the defense of contributory negligence, negligence of fellow servant or assumed risk, but under such circumstances leaves both parties amenable to the rules of the common law, governing master and servant. Section 4, part 1, entitles the employé to bring suit against a nonsubscribing employer, and when such employer is not a subscriber, section 1 of the act deprives him of the defense of contributory negligence, etc. If he is a subscriber, the section does not apply; in fact there is no cause of action against him. Section 1, part 4, above quoted, defining who are employers and employés, further evidences the fact that the provisions of the act do not apply in this case. The term "employé" as used in the act, does not mean a casual employé. Section 1 of the act provides that, in an action for damages by an employé, "it shall be no defense" that he was guilty, etc. The employé here referred to is an employé under the act as defined. If he was such employé as would be entitled to compensation under the act, appellee would have no cause of action; if he was not such employé, then the employer was not deprived of his common-law defense. We hold he was not an employé within the meaning of the act, and, not being such, he was subject to the defense of contributory negligence, etc. The trial

court, therefore, was in error in rendering judgment on the verdict finding appellee guilty of contributory negligence. He should either have set the verdict aside or rendered a judgment for appellant. Owing to the inconsistency of the verdict, we believe a new trial should have been awarded.

[13] As to whether the battering-ram as constructed in this case was an instrumentality such as required special skill in its operation by the helper guiding it, we have concluded not to discuss. We will only refer to the rule generally stated that, where skill or special fitness is required, the duty appears to be on the master to use ordinary care to furnish a competent helper. This is, we believe under the record in this case, a question for the jury.

We shall not discuss the assignments further, but believe what has been said disposes of most of them.

This case will be reversed and remanded.