STANDARD SCALE & SUPPLY CO. v. CHAPIN. (No. 6321.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 21, 1920. Rehearing Denied Feb. 18, 1920.)

1. SALES ⬥181(5)—CONTRACTS WHICH WERE BASIS OF BUYER'S SUIT FOR DAMAGES ADMISSIBLE IN EVIDENCE.

In a suit for damages to a paving contractor through insufficiency of a concrete mixer sold him by defendant, plaintiff having alleged that he had, to defendant's knowledge, been awarded contracts for the laying of specified grade of concrete, the written paving contracts awarded to plaintiff were properly admitted in evidence as the basis of his suit when properly proven.

2. EVIDENCE ⬥181—PROPER PREDICATE FOR SECONDARY EVIDENCE OF PAVING CONTRACTS.

In an action by a paving contractor for damages against the seller of a defective cement mixer, copies of the written contracts between plaintiff and the city for paving held admissible in evidence over objection that they were secondary evidence; proper predicate having been laid by the testimony of the mayor of the city that the contracts introduced were the reduction to writing of those awarded plaintiff, etc.

3. APPEAL AND ERROR ⬥739—MULTIFARIOUS ASSIGNMENT TO REFUSAL OF CHARGE IMPROPER.

An assignment of error that the court erred in failing to grant "the special charge requested by defendant," then setting out seven such charges, is multifarious.

4. TRIAL ⬥258(1)—REQUESTS FOR INSTRUCTIONS SHOULD NOT BE COMBINED IN SINGLE INSTRUMENT.

Where seven special charges or issues were requested by defendant in one instrument, it was not the duty of the trial judge to sever and separate the good from the bad, nor to send to the jury portions marked "Given" with those refused, which is a practice not to be commended.

5. APPEAL AND ERROR ⬥731(1), 733—ASSIGNMENT OF ERROR TOO GENERAL FOR ANY PURPOSE.

The assignment of error "because the verdict of the jury and the judgment of the court based thereon is contrary to the law and evidence in the case" is too general for any purpose.

6. SALES ⬥441(4) — EVIDENCE SUSTAINING AWARD FOR DEFECTIVE PERFORMANCE OF CONCRETE MIXER SOLD PAVING CONTRACTOR.

In an action by a paving contractor against the seller of a defective concrete mixer, the guaranty having been that the mixer would lay not less than 1,400 surface yards of 6-inch concrete per day, but the machine not having been capable of the service, and having delayed the work some seven months, evidence as to damages-held sufficiently certain and specific to sustain an award to plaintiff of $1,940, showing in fact a net loss of $2,125.

7. APPEAL AND ERROR ⬥216(2) — INSTRUCTION SUBMITTING ISSUE OF DAMAGES FROM SALE OF DEFECTIVE CONCRETE MIXER GOOD IN ABSENCE OF SPECIAL REQUESTS.

In an action by a paving contractor for damages through sale to him of a concrete mixer defective under the seller's guaranty that it would mix 1,400 yards of 6-inch concrete daily, charge that the measure of plaintiff's damages was the difference, if any, between the increased cost, if any, actually and necessarily incurred, of preparing concrete with the machine as furnished, and what would have been the cost had the machine met representations, held to afford defendant seller no ground of complaint; no requests for special instructions having been made.

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Suit by O. C. Chapin against the Standard Scale & Supply Company. From judgment for plaintiff, defendant appeals. Affirmed.

Spafford & Reynolds, of Dallas, and Schlesinger & Schlesinger, of San Antonio, for appellant.

Frank H. Wash and J. D. Dodson, both of San Antonio, for appellee.

COBBS, J. This suit was filed against Standard Scale & Supply Company by O. C. Chapin, alleging:

That "about November 1, 1914, he was awarded contracts for laying approximately 60,000 surface yards of concrete streets in the city of San Antonio, and that in order to do this work he desired to purchase a concrete mixer with a capacity of not less than 1,400 square yards of 6-inch concrete per day; that appellant was engaged in the business of manufacturing and selling concrete mixers, and, after having been informed by appellee of the above facts, sold him a concrete mixer which was expressly warranted to have a satisfactory working capacity of 1,400 square yards of concrete per day; that, relying upon such warranty, appellee purchased such mixer, but the same was defective and greatly inferior to what it had been guaranteed and represented to be; that he promptly notified appellant that the machine was defective and to begin operation with it would cause him great financial loss; that appellant expected to sell other machines, and through its agents persuaded appellee to proceed with such machine, promising him that appellant would protect him in any loss he sustained by use of said machine pending the time that appellant would furnish him with a new mixer which would do the work that appellant had warranted the machine to do; that, relying upon such promise to protect him in any losses he would incur by use of said machine, appellee did use the same, but appellant never furnished a new machine; and that the loss sustained thereby was the excess in the actual cost of doing the work with the defective machine above what it would have reasonably cost to have done the work had the machine been as represented, and was $5,000."

Appellant answered, claiming the machine sold was a new and untried machine, and that the appellee knew the same was an experiment, and that appellee assumed all the risk incident to the use of the machine. Appellant further pleaded estoppel because the appellee used the machine in all of his work and completed all of his paving in San Antonio with said alleged defective machine. Appellant filed a cross-action against appellee and prayed for damages in the sum of $5,500 for expenses incurred in labor, materials, and mechanical parts on the machine furnished the appellee.

The trial was before a jury on special issues, and resulted in a judgment in favor of appellee against appellant for $1,940.

The first assignment is:

"Because the court erred in admitting in evidence the copies of paving contracts attached to plaintiff's trial amendment; the defendant objecting to the said exhibits as being at variance with the allegations of the pleadings of plaintiff in the case."

The proposition of law contended for is:

"Evidence not originally admissible cannot be made admissible by attaching the same to a pleading filed in the case."

The assignment is not clear and contains two objections in one; that is, it is claimed it was error to admit in evidence paving contracts because attached to plaintiff's trial amendment, and being in variance with the allegations of the pleadings of plaintiff. There would be no objection to introducing the same in evidence, though attached to the pleading, if properly proven, while there might be if there was a variance between the allegations and the proof, but the proposition seems confined to the objection that, if not originally admissible, it could not be made so by attaching same to the pleading. Appellee strenuously objects to our considering the assignment at all, for the reason it is not a proposition, and fails to point out any alleged variance, and the proposition cannot be made admissible by attaching it to the pleading. Tex. Harvester Co. v. Wilson-Whaley Co., 210 S. W. 574.

[1] The contract to do the street paving was awarded to appellee by the city about November 1, 1914, and the written contracts about which appellant complains were based upon awards for laying approximately 60,000 surface yards of concrete in the city of San Antonio, and upon the trial the contracts were properly proven up the basis of the suit.

These contracts were attached to appellee's trial amendment, and then described in response to appellant's exception in the first amended original answer, demanding in a very full special exception a description of the contracts, the dates thereof, names of parties, and consideration therefor.

[2] The second assignment complains that—

The "court erred in admitting in evidence the contracts between the plaintiff and the city of San Antonio attached to plaintiff's trial amendment because the same were not the original contracts, not signed up by all of the contracting parties, and no predicate was laid for the introduction of the same as secondary evidence."

The proposition is:

"Copies of written instruments are not admissible in evidence unless proof of loss of the original instrument has been made and a proper predicate laid for their introduction as secondary evidence."

The proof introduced was to the effect that—

Appellee "testified that the awards on which these contracts were based were made during the months of September and October, 1914. C. G. Brown, who was mayor of the city of San Antonio at the time the awards were made and the contracts executed, testified that it was not unusual for awards which were made in September or December to be not formally reduced to and executed as written contracts before as late as January or February, and that such delay was occasioned in the contracts going the rounds and being examined and passed upon by different parties. And the contracts introduced were the reduction to writing of the contracts which were awarded appellee, and were the identical contracts which were attached to appellee's trial amendment."

Mr. Brown also testified the contracts were originals, though not signed by all the parties.

[3, 4] The third assignment is:

"Because the court erred in failing to grant the special charge requested by defendant, to wit:

" 'In the District Court of Bexar County, Forty-Fifth Judicial District of Texas.

" 'O. C. Chapin v. Standard Scale & Supply Co. et al.

" 'Now comes the defendant in the above-entitled cause and moves the court to submit to the jury the following special issues in this cause:

" '(1) Did the defendant in the sale of a certain concrete mixing machine to the plaintiff during the latter part of 1914 expressly warrant that said machine would not mix less than 1,400 square yards of concrete per day? Answer "Yes" or "No."

" '(2) Was it due entirely to defects in the machine that it did not do the amount of work the plaintiff expected it would do? Answer "Yes" or "No."

" '(3) Did the plaintiff, after knowing the machine would not do the work he expected of it, continue to use the same until he had carried out his contracts with the city of San Antonio, and thereby waive any claim against the defendant growing out of the purchase of said machine? Answer "Yes" or "No."

" '(4) Did the defendant, Standard Scale & Supply Company, agree to reimburse the plaintiff any damage or loss he sustained by using said machine? Answer "Yes" or "No."

" '(5) Did the plaintiff, when he gave the agent of defendant the order for the mixing machine, inform him of the cost per square yard of the concrete he expected to mix with the machine that he so purchased? Answer "Yes" or "No."

" '(6) Did the plaintiff, O. C. Chapin, suffer any actual loss or damage through the use of said machine, and, if so, in what amount, and, if none, then answer "None."

" '(7) Did the defendant, Standard Scale & Supply Company, suffer any loss or damage through the sale of the machine to the plaintiff, O. C. Chapin, and, if so, in what amount? Preston P. Reynolds, Schlesinger & Schlesinger, Attorneys for defendant, Standard Scale & Supply Company.

" 'Refused. S. G. Tayloe, Judge.' "

Appellee objects to the consideration of this assignment. Clearly the assignment is multifarious. It is a request for a number of special issues in one instrument, in which one might be a correct proposition of law and another either given or refused. It is not the duty of the trial judge to sever and separate the good from the bad, nor to send to the jury portions marked "Given" with those refused, if such there should be. It is a practice not to be commended. Merchants' Ice Co. v. Scott & Dodson, 186 S. W. 422; Longworth v. Stevens, 145 S. W. 261. Some of the issues requested the court gave in his charge; others not warranted by the evidence.

[5] The fourth assignment is:

"Because the verdict of the jury and the judgment of the court based thereon is contrary to the law and evidence in the case."

It is too general for any purpose. It does not pretend to point out wherein the verdict and judgment are contrary to the law and the evidence. It is not at all helpful to the court in searching for errors committed in the trial of the case. Wardlow v. Andrews, 180 S. W. 1162.

[6] The fifth, sixth, seventh, and eighth assignments of error are very general, and all propositions thereunder are also likewise very general. They, however, direct the attention of the court to the proposition and claim made and errors alleged that under the pleading and evidence they are not sufficient to recover upon; that the proof is not certain and specific as to damages, which are too remote, speculative, and uncertain upon which to base a recovery.

The testimony discloses the sale of a concrete mixer to be used in the laying of 60,000 square yards of concrete streets awarded to appellee to be constructed under a guaranty that such mixer would lay not less than 1,400 surface yards of 6-inch concrete per day. The machine was found when delivered to be defective and would not perform that service, the service for which it was purchased. The appellee refused to accept the same because of such defect, but appellant induced appellee to operate the same under promise that a new machine would be supplied which it was represented would do the work, and until such time defendant would care for all losses occasioned by operating and using such defective mixer. Appellee relied upon that promise and operated it at a loss.

W. C. Moody, who was one of the agents participating in the sale of the mixer to appellee, testified that the mixer "just wasn't any good."

Appellee testified that he informed the agents of appellant when they sold him the mixer that it was to be used in the laying of 60,000 yards of concrete on the streets of

San Antonio; that it took the same amount of labor to operate the machine in its defective condition as it would have required if it had been as represented, and that it took about seven months longer to do the work with the defective machine than if it had been as represented; that the loss to him by reason of the defect was a difference between what it actually cost to lay the concrete, 22½ cents over what it would have cost had the machine done the work it was represented to do, which at that time should have been about 10 cents per yard; that this claim does not represent prospective profits, but is the actual extra cost to appellee to lay the concrete with the defective machine and represents money out of his pocket for which he has got checks to show; that the agent of appellant admitted that the mixer was defective; that he refused to accept or use it until the agents of appellant promised that appellant would furnish another mixer and to use the defective mixer in the meantime, and appellant would take care of all his losses, upon which he relied.

Appellee testified that the actual cost of laying the 60,000 yards was 22½ cents per yard, and that the reasonable cost should not have been over 10 cents per yard. This showed an actual loss of 12½ cents, or $7,500. He also testified that it required seven months and five days longer to do the work with the defective machine than it should have had the machine been fit and as guaranteed, and that during this time he had an overhead expense of $750 monthly. This amounted to a total overhead during the lost time of $5,375. This, of course, entered into the 22½ cents per yard, and obviously the jury took the view that the overhead should be deducted in order to get at the net loss. These figures would leave a net loss of $2,125. The jury allowed appellee $1,940.

[7] The ninth assignment of error is:

"Because the court erred in failing to charge on the correct measure of damage."

The proposition thereunder is:

"It is error for the court to submit as a measure for damages matters not raised by the pleadings or evidence in the case."

The charge of the court assailed is:

"Question No. 5. What amount of money, if any, has the plaintiff been damaged by the defendant?

"You are instructed in connection with question No. 5, in assessing the plaintiff's damages, if any, that the measure of damages is the difference, if any, between the increased cost, if any, actually and necessarily incurred, of preparing the concrete with the machine as furnished and what would have been the cost had the same been prepared by the use of the machine had the same been according to the representation (that is, in case any such represen-

tation was made), and you will only consider the cost of such pieces of work as aforesaid, if any, as the plaintiff informed the agent or agents of the defendant (at or before the time the order was given for said machine) he intended to use said machine in the execution thereof."

There were no special requests made by appellant for special instructions except as stated en masse to correct any supposed errors in the charge. Dyer v. McWhirter, 51 Tex. Civ. App. 200, 111 S. W. 1053. We can see no reason for complaint at the court's charge or wherein the appellant is prejudiced thereby.

We find no reversible errors assigned, and they are all overruled and the judgment is affirmed.