Robert RICHMOND, as Legal Guardian of Donald Combest Richmond, and Pacesetter Personnel Service, Inc., Appellants,

v.

L.D. BRINKMAN & COMPANY (TEXAS) INC., Appellee.

No. 05–99–01703–CV.

Court of Appeals of Texas, Dallas.

Jan. 23, 2001.

William M. Hayner, Jr., William M. Hayner & Associates, David R. Weiner, Kent C. Krause, Dallas, for Appellant.

Greg Winslett, James K. Peden, III, Strasburger & Price, L.L.P., Dallas, for Appellee.

Before Justices LAGARDE, FITZGERALD, and RICHTER.

## OPINION

Opinion By Justice FITZGERALD.

In this workers' compensation case, Robert Richmond, as Legal Guardian of Donald Combest Richmond, *non compos mentis,* and Pacesetter Personnel Service, Inc. ("Pacesetter") appeal a summary judgment granted in favor of L.D. Brinkman & Company (Texas) Inc. ("Brinkman"). In one point of error, Richmond and Pacesetter contend the trial court erred in granting summary judgment based on the common law borrowed servant doctrine because the Texas Labor Code supersedes the common law test. We affirm the trial court's judgment.

### Factual Background

Donald Richmond was an employee of Pacesetter, a temporary common worker employer. Pacesetter assigned Donald to work for Brinkman at one of Brinkman's warehouses. Brinkman paid Pacesetter an hourly rate for Donald's services, out of which Pacesetter would deduct an amount for workers' compensation insurance and other costs before paying Donald his hourly wage. Brinkman also carried its own workers' compensation insurance.

While Donald was loading carpet pads onto a rack from a fork-lift pallet at the warehouse, he lost his footing and fell approximately seventeen feet to the ground. Donald was severely and permanently injured. Donald filed a workers' compensation claim with Pacesetter's insurer, CNA Insurance, from whom he received benefits. CNA then filed suit against Brinkman, asserting subrogation rights. Robert Richmond, as Donald's legal guardian, intervened on Donald's behalf. The trial court realigned the parties so that Richmond became the plaintiff and CNA, suing in Pacesetter's name, became the intervenor.

Richmond and Pacesetter sued Brinkman for negligence to recover damages for Donald's personal injuries. Brinkman filed a motion for summary judgment, con-

tending, *inter alia,* that because Donald was working as Brinkman's "borrowed servant" at the time of the accident, Brinkman was entitled to the protection of the Texas Workers' Compensation Act, that bars an employee from asserting work-related common law claims against an employer. The trial court, finding Donald was the borrowed servant of Brinkman at the time he was injured, granted Brinkman's motion for summary judgment and rendered judgment denying Richmond's and Pacesetter's claims. Richmond and Pacesetter appealed.

### Standard of Review

The standards for reviewing a summary judgment are well established. *See* Tex.R.Civ.P. 166a(c); *Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex.R.Civ.P. 166a(c); *Nixon,* 690 S.W.2d at 548. If the movant establishes its right to judgment as a matter of law, the burden shifts to the nonmovant to raise fact issues precluding summary judgment. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979).

### Borrowed Servant Doctrine

In their sole issue, Richmond and Pacesetter contend the trial court erred in granting summary judgment. They argue chapter 92 of the Texas Labor Code supersedes the common law borrowed servant doctrine and governs the result in this case.

The borrowed servant doctrine provides that the employee of one employer may become the borrowed servant of another, thereby giving the employer who has the right of control over the manner and details of the employee's work the protections of the Workers' Compensation Act. *Marshall v. Toys–R–Us Nytex, Inc.,*

825 S.W.2d 193, 195–96 (Tex.App.—Houston [14th Dist.] 1992, writ denied) (citing *Sparger v. Worley Hosp., Inc.*, 547 S.W.2d 582, 583 (Tex.1977); *Carr v. Carroll*, 646 S.W.2d 561, 563 (Tex.App.—Dallas 1982, writ ref'd n.r.e.)). The employer who has the right to control the employee and the details of his work at the time of the injury is immune from common law liability pursuant to the exclusive remedy provision of the Workers' Compensation Act.[1] *Cearley v. Cross Timbers Prod. Co.*, 855 S.W.2d 852, 854 (Tex.App.—El Paso 1993, no writ).

In this case, Brinkman moved for summary judgment, contending that at the time Donald was injured, he was a borrowed servant of Brinkman and Brinkman was, therefore, immune from common law liability pursuant to section 408.001(a). Richmond and Pacesetter responded by asserting: (1) under section 92.021 of the Texas Labor Code, Pacesetter was Donald's sole employer; (2) fact issues existed as to whether Brinkman retained control over Donald such that Donald was Brinkman's borrowed servant; and (3) even if Donald was Brinkman's borrowed servant, Brinkman waived the protections of the Workers' Compensation Act. The trial court found that Donald was Brinkman's borrowed servant and granted summary judgment in favor of Brinkman. On appeal, the parties do not dispute the issue of who had the right to control Richmond's activities at the time of his injuries or whether Brinkman waived the protections of section 408.001(a); rather, the only issue in this appeal is whether, as Richmond and Pacesetter argue, chapter 92 of the Texas Labor Code supersedes the application of the borrowed servant doctrine in this context.[2]

■ Under chapter 92, Pacesetter was a licensed temporary common worker employer,[3] Donald was a common worker,[4] and Brinkman was a user of common workers.[5] Section 92.021 provides that:

(a) Each license holder is the employer of the common workers provided by that license holder.

(b) A license holder may hire, reassign, control, direct, and discharge the employees of the license holder.

TEX.LAB.CODE ANN. § 92.021 (Vernon 1996). Pacesetter and Richmond argue that this statute expressly confers the absolute right of control and direction upon the license holder-employer, superseding the borrowed servant doctrine and a common law analysis of who has the right of control over the employee. According to Pacesetter and Richmond, Brinkman cannot claim

---

1. Section 408.001(a) of the Texas Labor Code provides:

    Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent of employee of the employer for the death of or a work-related injury sustained by the employee.

    TEX.LAB.CODE ANN. § 408.001(a) (Vernon 1996).

2. Although Richmond's and Pacesetter's response to Brinkman's motion for summary judgment does not specifically state that chapter 92 preempts common law, in liberally construing the response, we assume the preemption argument was part of the argument that under chapter 92, Pacesetter was Richmond's sole employer. *Cf. Roark v. Allen*, 633 S.W.2d 804, 809 (Tex.1982) (courts should construe pleadings liberally in the pleader's favor).

3. A temporary common worker employer is defined as a "person who provides common workers to a user of common workers." TEX. LAB.CODE ANN. § 92.002(7) (Vernon 1996).

4. A common worker is defined as "an individual who performs labor involving physical tasks that do not require:

    (A) a particular skill;
    (B) training in a particular occupation, craft, or trade; or
    (C) practical knowledge of the principles or processes of an art, science, craft, or trade."

    TEX.LAB.CODE ANN. § 92.002(3) (Vernon 1996).

5. A user of common workers is defined as "a person who uses the services of a common worker provided by a temporary common worker employer." TEX.LAB.CODE ANN. § 92.002(8) (Vernon 1996).

protection under the Workers' Compensation Act from common law liability for Donald's work-related injuries.

In support of their argument, Pacesetter and Richmond cite *Del Industrial, Inc. v. Texas Workers' Compensation Insurance Fund*, 973 S.W.2d 743 (Tex.App.—Austin 1998), *aff'd*, 43 Tex.Sup.Ct.J. 589, 35 S.W.3d 591 (2000). In *Del*, the court of appeals, and, ultimately, the supreme court [6] determined that chapter 91 of the Texas Labor Code supersedes the common law right-of-control test and defines the relationship among staff leasing companies, client companies, and leased workers for the purpose of workers' compensation insurance. *Del*, 973 S.W.2d at 748–49; *see also Del*, 43 Tex.Sup.Ct.J. at 593, 35 S.W.3d at 592. Richmond and Pacesetter argue that, just as the right-of-control test has been superseded in the staff leasing area, so it has been superseded in the area of temporary common workers. We disagree.

*Del* is distinguishable from this case because chapter 91 of the Texas Labor Code is distinguishable from chapter 92. Chapter 91, more complex and detailed than chapter 92, deals expressly with the issue of workers' compensation insurance, providing that the license holder and the license holder's client company shall be considered "coemployers." Tex.Lab.Code Ann. § 91.042(c) (Vernon 1996). The statute provides that if the license holder elects to obtain workers' compensation insurance, both the license holder and the client will be subject to the exclusive remedy provisions of the Workers' Compensation Act. *See id.* § 91.042(d). Conversely, if the license holder elects not to obtain workers' compensation insurance, both the license holder and the client company will be subject to exposure to common law liability. *See id.* In interpreting this stat-

ute, the *Del* court concluded the statute superseded common law in defining the relationship of staff-leasing companies. *See Del*, 973 S.W.2d at 748–49; *see also Del*, 43 Tex.Sup.Ct.J. at 593, 35 S.W.3d at 592 (affirming court of appeals' holding).

Conversely, chapter 92 simply provides that "[e]ach license holder is the employer of the common workers provided by that license holder," and that "a license holder may hire, reassign, control, direct, and discharge the employees of the license holder." Tex.Lab.Code Ann. § 92.021 (Vernon 1996). Unlike chapter 91, this chapter does not expressly detail the relationship among the users of temporary common workers and the effects of the license holder's decision whether to provide workers' compensation insurance. *See id.* Further, we do not read the language of the statute to mean that a licensed temporary common worker employer is the *only* employer of the common worker. Although the statute provides that the licensed temporary common worker employer is the employer of the common worker, the user of the temporary worker could still be a second employer.[7] *See, e.g., Brown v. Aztec Rig Equip., Inc.*, 921 S.W.2d 835, 844 (Tex.App.—Houston [14th Dist.] 1996, writ denied) (acknowledging that a temporary employee may be the employee of two employers for workers' compensation purposes).

We conclude the legislature could have defined the relationship of users of temporary common workers as they did with staff leasing employers in chapter 91, but chose not to. *See Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex.1994) (in construing a statute, court must look to the intent of the legislature and construe the statute to give effect to that intent); *Morrison v. Chan*, 699 S.W.2d 205, 208

---

**6.** The supreme court's opinion affirming the Austin Court of Appeals was issued after the parties filed their briefs in this case.

**7.** We note that Pacesetter's work ticket, defining the relationship between Pacesetter,

Brinkman, and the temporary workers, provided that "Customer [Brinkman] is the worksite employer with authority to direct the work to be done, schedule hours, assign duties and supervise the employees."

(Tex.1985) (court bound to construe a statute as written, and, if possible, ascertain intent of the legislature from language used in statute). This conclusion is strengthened by the fact that chapters 91 and 92 were enacted at the same time. *See* Act of April 21, 1995, 74th Leg., R.S., ch. 76, § 9.20(a), 1995 Tex.Gen.Laws 458, 635–45 (enacting both chapters 91 and 92 of the Texas Labor Code). In declining to define the relationship in chapter 92 for workers' compensation purposes, the legislature implicitly left the issue to be resolved, as it has been in the past, through the common law application of the right-of-control test. *See, e.g., Carr*, 646 S.W.2d at 562; *see also Coppedge v. Colonial Sav. & Loan Ass'n*, 721 S.W.2d 933, 938 (Tex.App.—Dallas 1986, writ ref'd n.r.e.) (when the legislature creates a cause of action and remedy for its enforcement, we regard that legislation as cumulative of the common law, unless the statute expressly or impliedly negates the latter).

Our conclusion is further bolstered by the fact that, if Richmond's and Pacesetter's interpretation of the statute is correct, every user of common workers would be exposed to common law personal injury claims of their workers, even if they chose to acquire their own workers' compensation insurance or to deal only with temporary common worker employers who had obtained workers' compensation insurance, or both, as in Brinkman's case. Such a result would be absurd and could have a disastrous effect on the temporary employment industry. *See* Tex.Gov't Code Ann. § 311 .032(5) (Vernon 1998) (courts may consider consequences of a particular construction); *see also id.* § 311.021(3); *Southwestern Life Ins. Co. v. Montemayor*, 24 S.W.3d 581, 584–85 (Tex.App.—Austin 2000, pet. denied) (court should not construe statute in way that leads to foolish or absurd consequences; rather, we presume the legislature intended a just and reasonable result).

Further, such a result would contravene the line of cases holding that companies who lease employees may contractually agree with the original employer that the original company will provide workers' compensation insurance. *See Williams v. Brown & Root, Inc.*, 947 S.W.2d 673, 677 (Tex.App.—Texarkana 1997, no writ); *Brown*, 921 S.W.2d at 841–42; *Rodriguez v. Martin Landscape Mgmt., Inc.*, 882 S.W.2d 602, 604 (Tex.App.—Houston [1st Dist.] 1994, no writ); *Pederson v. Apple Corrugated Packaging, Inc.*, 874 S.W.2d 135, 136–37 (Tex.App.—Eastland 1994, writ denied); *Gibson v. Grocers Supply Co.*, 866 S.W.2d 757, 759 (Tex.App.—Houston [14th Dist.] 1993, no writ); *Marshall*, 825 S.W.2d at 195–96; *Cherry v. Chustz*, 715 S.W.2d 742, 743 (Tex.App.—Dallas 1986, no writ). Under circumstances similar to the arrangement in this case, this Court has concluded "there is no reason why an employer cannot contractually provide for payment of premiums on his employees by a third-party acting on his behalf." *Cherry*, 715 S.W.2d at 744. As long as there is a compensation policy in force, "the manner in which the insurance is paid is immaterial." *Brown*, 921 S.W.2d at 842. If we accept Richmond's and Pacesetter's argument that chapter 92 supersedes common law, these cases would become irrelevant because the company leasing the temporary employee would be subject to common law liability no matter what efforts it took either to provide its own workers' compensation insurance or to ensure that the temporary common workers' employer provided workers' compensation insurance.

For these reasons, we conclude the common law right-of-control test is not superseded by chapter 92, and the trial court did not err in applying the borrowed servant and granting summary judgment in favor of Brinkman. Having resolved Richmond's and Pacesetter's sole issue against them, we affirm the trial court's summary judgment.