Appellants’ Motion for Rehearing Overruled; Opinion Issued December 20,
2001 Withdrawn; Affirmed and Substitute Opinion filed 















Appellants’
Motion for Rehearing Overruled; Opinion Issued December 20, 2001 Withdrawn; Affirmed and Substitute Opinion filed February 6, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.  14-99-01335-CV

____________

 

CENOBIO
CORONADO and OFELIA CORONADO, Individually, and as Next Friends of Their
Children, ARMANDO, ALICIA, JORGE, and 

ANNA
CHRISTINA, Appellants

 

V.

 

SCHOENMANN PRODUCE CO., Appellee

 

_______________________________________________________________________

 

On Appeal from the 280th District Court

Harris County, Texas

Trial Court Cause No. 96-03156

 

_______________________________________________________________________

 

S U B S T I
T U T E   O P I N I O N

            Our opinion issued December 20, 2001 is
withdrawn.  We overrule appellants’
motion for rehearing and issue this substitute opinion.

            Appellants Cenobio
Coronado and Ofelia Coronado, individually and as next friends of their
children, Armando, Alicia, Jorge, and Anna Christina (the “Coronados”), appeal
from the trial court’s take-nothing judgment entered in favor of appellee Schoenmann Produce
Co.  We affirm.








I.  Background

            Farming Technologies, Inc. (“FTI”)
packages and sells potatoes through distributors under the registered trademark
name of “MountainKing Potatoes.”  Schoenmann is a
wholesale distributor of fruits and vegetables, including MountainKing
Potatoes.  FTI and Schoenmann
are located in the same warehouse facility, along with several other
businesses.  FTI and Schoenmann
are owned by the same holding company. 
It is undisputed that, during all times material to this case, Cenobio Coronado was an employee of FTI.  Cenobio was injured
while replacing a conveyor belt on a potato cull tank. The tank was owned and
located on premises maintained by FTI. 
The Coronados contend
Saul Flores, a co-worker employed by FTI, abandoned his assigned duties and
failed to timely turn the conveyor off before Cenobio
was injured. Cenobio’s arm was mangled when it was
pulled between two rollers.

            The Coronados maintain
that Cenobio was an employee of both FTI and Schoenmann at the time of the accident.  This contention is based mainly on the
assertion that FTI and Schoenmann both had the right
to control Cenobio’s work.[1]  The Coronados filed suit
against Schoenmann alleging negligence and gross
negligence based solely on breach of an employer’s legal duties.  Subsequently, the Coronados added FTI
as a defendant.  FTI filed, and the trial
court granted, a motion for summary judgment based on limitations.[2]  The issue at trial was whether Cenobio was an employee of both Schoenmann
and FTI.  The trial was bifurcated, with
the issue of whether Cenobio was an employee of Schoenmann at the time of the accident to be tried first. FTI’s status as Cenobio’s
employer was previously determined by another court.[3]

            When the Coronados rested
their case after presenting evidence on the joint control issue, Schoenmann moved for a directed verdict.  The trial court granted Schoenmann’s
motion, finding no evidence in the record that: (1) Schoenmann
employed Cenobio at the time of the accident; (2) Cenobio was acting in the course and scope of employment
with Schoenmann at the time of the accident; (3) Saul
Flores was acting as an employee of Schoenmann at the
time of the accident; and (4) Flores was acting in the course and scope of
employment with Schoenmann at the time of the
accident.

II.  Appellants’ Issues

            On appeal, the Coronados
contend the evidence shows: (1) Schoenmann and FTI
exercised joint control over Cenobio and other FTI
workers at the time of his work-related injury; (2) Schoenmann
exercised persistent supervisory control over Cenobio
and other FTI workers at the time of his work-related injury; and (3) there was
a significant overlap in the supervisory ranks of Schoenmann
and FTI at the time of his work-related injury. 
As a preliminary matter, Schoenmann contends
the Coronados have
waived three of the grounds on which the directed verdict was based.  Schoenmann asserts
the Coronados have only
addressed the ground regarding whether Schoenmann
employed Cenobio at the time of the accident, but did
not address the other three grounds.  We
conclude that the Coronados have not
appealed the points pertaining to Flores’s status
as a Schoenmann employee.  With respect to the ground that Cenobio was not acting in the course and scope of
employment with Schoenmann, we find the Coronados have not
waived that ground on appeal.  Rule
38.1(e) of the Texas Rules of Appellate Procedure provides “[t]he statement of
an issue or point will be treated as covering every subsidiary question that is
fairly included.”  Courts are further
directed to liberally construe appellate briefing rules.  Tex.
Mexican Ry. Co. v. Bouchet,
963 S.W.2d 52, 54 (Tex.
1998).  Keeping these rules in mind, we
conclude the issues presented in this appeal fairly include whether Cenobio was acting in the course and scope of employment by
Schoenmann at the time of the accident.  See
Stephenson v. LeBoeuf, 16 S.W.3d 829, 843–44
(Tex. App.—Houston [14th
Dist.] 2000, pet. denied).

III.  Standard of Review for
Directed Verdict

            A directed verdict is proper when:
(1) a defect in the opponent’s pleading renders it insufficient to support a
judgment; (2) the evidence conclusively proves a fact that establishes a
party’s right to judgment as a matter of law; or (3) the evidence offered on a
cause of action is insufficient to raise an issue of fact.  Knoll
v. Neblett, 966 S.W.2d 622, 627 (Tex.
App.—Houston [14th Dist.] 1998, pet. denied). 
When reviewing a motion for directed verdict, we consider all the
evidence in the light most favorable to the nonmovant,
disregard all evidence and inferences to the contrary, and give the nonmovant the benefit of all inferences arising from the
evidence.  Mayes v. Stewart, 11 S.W.3d 440, 450 n.4 (Tex. App.—Houston [14th
Dist.] 2000, pet. denied).  In this
review, we must determine whether there is evidence of probative value to raise
a fact issue on the material question presented.  Kline
v. O’Quinn, 874 S.W.2d 776, 785 (Tex. App.—Houston [14th Dist.] 1994, writ
denied).  If we find any evidence of
probative value that raises a material fact issue, the directed verdict is
improper and the judgment must be reversed and remanded for a jury
determination on that issue.  Columbia/HCA of Houston, Inc. v. Tea Cake
French Bakery & Tea Room, 8 S.W.3d 18, 22 (Tex. App.—Houston [14th
Dist.] 1999, pet. denied).

IV.  Test For
Employee-Employer Relationship

            The Coronados seek to
impose upon Schoenmann the non-delegable duty of an
employer to provide a safe place to work; therefore, it is their burden to show
that Cenobio was an employee of Schoenmann
at the time of his injury.  See Anchor Cas. Co. v. Hartsfield, 390 S.W.2d 469, 471 (Tex.
1965).  Under Texas law, the
test to determine whether an individual is an employee is the purported
employer’s right to control the details of that individual’s work.  Newspapers,
Inc. v. Love, 380 S.W.2d 582, 592 (Tex. 1964); INA of Tex. v. Torres, 808 S.W.2d 291,
293 (Tex. App.—Houston [1st Dist.] 1991, no writ).  In the absence of an express contract of
employment or where the terms of employment are indefinite, evidence of the
exercise of control may be introduced to establish the right to control.  See
Anchor Cas. Co., 390 S.W.2d at 471; INA of Tex., 808
S.W.2d at 293.  The exercise of control
“must be so persistent and the acquiescence therein so pronounced as to raise
an inference that at the time of the act or omission giving rise to liability,
the parties by implied consent and acquiescence had agreed that the principal
might have the right to control the details of the work.”  Newspapers,
380 S.W.2d at 592.  However, “the ‘right
to control’ remains the supreme test and the ‘exercise of control’ necessarily
presupposes a right to control which must be related to some agreement
expressed or implied.”  Id. at
590.  Cenobio’s
employment status when he sustained injuries is to be determined by all the
facts and circumstances surrounding his work at that time.  See Goodnight v. Zurich Ins. Co.,
416 S.W.2d 626, 630 (Tex. Civ. App.—Dallas 1967, writ
ref’d n.r.e.).

            The issue of whether Schoenmann was Cenobio’s employer
at the time of his injury is complicated by the Coronados’ claim
that FTI and Schoenmann were Cenobio’s
joint employers at the time of his injury. 
The Coronados contend
they presented evidence sufficient to raise a material fact issue on FTI’s and Schoenmann’s concurrent
control over Cenobio’s work at the time of his
injury.  Here, there is no express
contract of employment between Cenobio and Schoenmann establishing either Cenobio’s
status as a Schoenmann employee or Schoenmann’s right to control the details of his work.  The Coronados claim, in
the absence of such a contract, they have presented evidence of Schoenmann’s “actual and persistent” exercise of control
over Cenobio and other FTI workers, thereby
establishing Schoenmann as Cenobio’s
joint employer. 

V.  The Joint Employer
Doctrine

            In support of their argument that Schoenmann was Cenobio’s joint
employer, the Coronados rely on section 226 of the
Restatement (Second) of Agency, which provides: 

A person may be the servant
of two masters, not joint employers, at one time as to one act, if the service
to one does not involve abandonment of the service to the other.

Restatement (Second) of Agency § 226
(1958).  They also cite three lines of
cases to support their theory that the joint employer doctrine should be
applied in this case: (1) application of the doctrine where a purported joint
employee caused injury to a third party; (2) application of the doctrine to
staff leasing services in the workers’ compensation context; and (3)
application of the doctrine under the Federal Employers’ Liability Act
(“FELA”).  However, the Coronados’ cited
cases are factually distinguishable. 
Here, the Coronados are
pursuing a common-law negligence cause of action for breach of non-delegable
duties owed by employers to employees.[4]  Uniquely, the Coronados seek recovery
from multiple, alleged employers who elected not to purchase workers’
compensation coverage.

            A.        Third-Party
Liability Cases

            First, the Coronados cite cases
in which courts applied the joint employer doctrine where a purported joint
employee caused injury to a third party. 
See White v. Liberty Eylau Sch.
Dist., 880 S.W.2d 156 (Tex. App.—Texarkana 1994, writ denied); Gulf Oil Corp. v.  Williams, 642 S.W.2d 270 (Tex.
App.—Texarkana 1982, no writ); W. Union
Tel. Co. v. Rust, 120 S.W. 249 (Tex. Civ. App. 1909,
writ ref’d).[5]

            Before the Restatement of Agency was
written, the Court of Civil Appeals addressed employer liability under the
joint employer doctrine in W. Union
Telegraph, 120 S.W. at 249.  The
plaintiff sued Western Union and
American District Telegraph Company of Texas for
injuries sustained when he was struck by a messenger boy’s bicycle.  Id. at
250.  Western
 Union was in the business of sending and receiving telegrams, and
American District rented office space from Western
 Union and furnished messenger boys to Western
 Union.  Id. at
251–52.  The court held that the
messenger boy was a servant under the control of both Western
 Union and American District at the time of the accident, and,
thus, both were liable to the plaintiff. 
Id. at 250–54.

            Later, in Gulf, the Texarkana court cited section 226 as authority for
imposing joint liability against two employers for injuries to a third
party.  642 S.W.2d at 272.  The plaintiff was a customer at a Gulf
station when he was shot by a security guard who took him for a robber.  Id. at
271–72.  The security guard was employed
by Empire Security Agency and furnished to Gulf pursuant to a contract.  Id.  The court affirmed an award for the plaintiff
against both Empire and Gulf because there was evidence that Empire and Gulf
had joint control over the guard.  Id. at 272.

            Similarly, in Liberty Eylau, the court specifically
adopted section 226 in holding that one could be the employee of joint
employers when an injured third party attempts to impose liability on both
employers.  880 S.W.2d at 159–60.  The court held that a fact issue existed on
whether both the school district and the county transportation department
employed a school bus driver whose bus struck the plaintiffs’ vehicle.  Id.

            Therefore, Texas courts
have consistently adopted and applied section 226 when a third party asserts
liability against two or more employers under the doctrine of respondeat superior.[6]  Section 226 should be applied in such
instances; however, as discussed below, many courts have applied it to cases
that did not involve liability of a principal to third parties.  Our survey of case law indicates that we may
be the first court to acknowledge the obvious; section 226 is included in that portion
of the Restatement of Agency entitled:

Chapter 7. Liability Of Principal To Third Person; Torts

Topic 2. Liability For Authorized Conduct Or Conduct Incidental Thereto

Title B. Torts Of Servants

Who Is A Servant.

            Further, we also may be the first
court to acknowledge that section 226 expressly does not apply to joint
employers:  “A person may be the servant
of two masters, not joint employers,
at one time as to one act . . . .”  See Restatement
(Second) of Agency § 226 (emphasis added).  A two-party action is in play when a
purported employee pursues a cause of action for negligence against his
purported employer(s).  A three party
action is in play when a plaintiff pursues an action against an employee/agent
of two or more principals/employers. 
Accordingly, we conclude that section 226 is properly applied only when
a third party asserts vicarious
liability against two or more employers.

B.        Staff Leasing Cases

            The Coronados also rely
on Brown v. Aztec Rig Equip. Inc.,
921 S.W.2d 835 (Tex. App.—Houston [14th Dist.] 1996, writ denied), in which
this court applied the joint employer doctrine to a staff leasing
relationship.  Administaff,
a staff leasing company, assigned Brown to work for Aztec, its client company.  Id. at
838.  The relationship between Administaff and Aztec was governed by a series of
agreements that required Administaff to provide
workers’ compensation coverage for workers it leased to Aztec.  Id.  The agreements also specifically stated that Administaff and Aztec will be considered “co-employers
(dual or joint employers)” of the leased workers for purposes of “employer
liability under workers’ compensation laws.”  Id.  Further, Brown signed employment agreements
in which he acknowledged that he was an employee of both Administaff
and Aztec for purposes of workers’ compensation coverage and in which he agreed
that, in the event of injury, his sole remedy was benefits under Administaff’s workers’ compensation policy.  Id.  Brown was injured while performing work for
Aztec and asserted negligence claims against both Administaff
and Aztec.  Id. at 837–38.

            We held that Administaff
and Aztec were Brown’s co-employers and both were immune from suit under the
exclusive remedy provisions of the workers’ compensation laws.  Id. at
847.  We cited section 226 and several
cases that have purportedly acknowledged the joint employer doctrine in the
workers’ compensation context.  See id. at 843–44 (citing Insurors Indem. & Ins.
Co. v. Pridgen, 223 S.W.2d 217, 218 (Tex. 1949)[7]; Thate v. Tex. & Pac. Ry.
Co., 595 S.W.2d 591, 595–96 n.1 (Tex. Civ.
App.—Dallas 1980, writ dism’d)[8]; Assoc. Indem. Co. v. Hartford Accident & Indem. Co., 524 S.W.2d 373, 375 (Tex. Civ. App.—Dallas 1975, no writ)[9]; Gen. Accident Fire & Life Assurance
Corp. v. 

 class=Section3>

Callaway, 429
S.W.2d 548, 549–51 (Tex. Civ. App.—Houston [1st
Dist.] 1968, no writ)[10]).  We noted that while these courts did not
reject application of section 226 or the joint employer doctrine, they did not
specifically adopt it.  Id. at
844.  We also cited Liberty Eylau as recognizing the joint
employer doctrine in Texas.  Id.  However, we applied the joint employer
doctrine based on the specific facts of the case — all the parties
contractually agreed Aztec and Administaff were
Brown’s co-employers.  Id. at
847.  We concluded that there was “no
reason to disregard the co-employer relationship where the parties expressly
contemplated such a relationship.”  Id.

            We also noted in Brown that the Texas Legislature
expressly recognizes co-employer status for purposes of workers’ compensation
in staff leasing services.  Id. at
846–47.  The Staff Leasing Services Act
(“SLSA”) governs staff leasing services. 
See Tex. Lab. Code Ann. § 91.001-91.063 (Vernon 1996 and Supp.
2003).  Under the SLSA, a staff leasing
company may elect to obtain workers’ compensation coverage for its
employees.  See Tex. Lab. Code Ann. §
91.042(a) (Vernon
1996).  The staff leasing company and its
client company are “co-employers” for workers’ compensation purposes.  See Tex. Lab. Code Ann. § 91.042(c) (Vernon
1996).  If the staff leasing company elects
to obtain workers’ compensation coverage, then recovery of workers’
compensation benefits is an injured employee’s exclusive remedy, and he is
barred from asserting a claim against either the staff leasing or the client
company for injuries sustained during the course and scope of employment.  See Tex. Lab. Code Ann. §§ 91.042(c), 406.034, 408.001 (Vernon 1996).
However, if the staff leasing company does not purchase workers’ compensation
coverage, an employee may pursue a common-law negligence cause of action
against the leasing company and its client company, and they cannot assert
traditional defenses.  See Tex.
Lab. Code Ann. §§
91.042(d), 406.004, 406.033 (Vernon 1996 & Supp. 2003).  Therefore, our Brown decision was based in part on the fact that SLSA mandates
co-employer status in staff leasing services. 
See Brown, 921 S.W.2d at
846–47.[11]  Accordingly, Brown does not support application of the joint employer doctrine
when a purported employee pursues common-law claims against two or more
non-subscribers who do not have a staff leasing relationship.[12]

            In Texas Workers’ Comp. Ins. Fund v. Del Indus. Inc., 35 S.W.3d 591
(Tex. 2000), the Texas Supreme Court confirmed co-employer status in staff
leasing services governed by the SLSA. 
The Coronados suggest
that the Del decision
indicates the Texas Supreme Court, if given the opportunity, will generally
recognize the joint employer doctrine. 
However, in Del, the court recognized co-employer
status only as statutorily authorized in staff leasing services.  Id. at
596.  The court certainly did not adopt
the joint employer doctrine when a purported employee pursues common-law claims
against two or more non-subscribers who do not have a staff leasing
relationship.

C.        FELA Cases

            Finally, in support of their contention
that the joint employer doctrine applies in this case, the Coronados
rely on a line of federal cases decided under FELA, 45 U.S.C.A. §§ 51–60
(1986).  See Kelley v. S. Pac. Co.,
419 U.S. 318
(1974); Baker v. Tex. & Pac. Ry. Co., 359 U.S. 227 (1959);
Lindsey v. Louisville & Nashville R.R. Co., 775 F.2d
1322 (5th Cir. 1985).  Under FELA, a
covered railroad is liable for negligently causing the injury or death of any
person “while he is employed” by the railroad. 
45 U.S.C.A. § 51; Kelley, 419 U.S. at 319.  In each of these cases, the court addressed
whether a defendant railroad was an injured worker’s employer under FELA even
though the worker was carried on the employment rolls of another company.  See
Kelley, 419 U.S. at 319–20;
Baker, 359 U.S. 227–28; Lindsey, 775 F.2d at 1323–24.  The Coronados cite these
cases as authority that evidence of overlapping supervisory authority between Schoenmann and FTI is probative evidence of a concurrent
right of control over Cenobio’s work.  The Coronados assert they
do not need to show that Schoenmann had full
supervisory control over Cenobio’s work, rather they
need only show that Schoenmann’s employees played “a
significant supervisory role” with regard to his work.  See
Lindsey, 775 F.2d at 1324 (citing Kelley,
419 U.S. at 327)
(stating “[t]he law does not require that the railroad have full supervisory
control.  It requires only that the
railroad, through its employees, plays a ‘significant supervisory role’ as to
the work of the injured employee”).

            In Kelley, the court applied section 226 and stated that one may be an
employee of a railroad under FELA while also employed by another.[13]  Kelley,
419 U.S. at
324.  The court ignored section 226’s
limiting language and applied it to an employee asserting liability against two
or more employers.  We respectfully
submit that the Supreme Court could have reached the same conclusion without
expanding section 226 beyond the boundaries expressed by the American Law
Institute.  Moreover, FELA cases are
distinguishable from this case because FELA allows recovery against a railroad
employer even if the injured worker is nominally employed by another.  See
Kelly, 419 U.S. at 324; Lindsey, 775 F.2d at 1324.  Nonetheless, even under FELA, the test is
whether the railroad has control over the employee’s work or the right to
control the employee’s work at the time of the injury.[14]  While evidence of an overlap in supervisory
ranks and a significant supervisory role may be factors to consider, the right
to control details of the work which
exposed an employee to the risk of injury remains the supreme test in Texas for
determining one’s status as an employee. 
See Newspapers, 380 S.W.2d at 590–92; INA of Tex., 808 S.W.2d at 293.

VI. 

Joint Employer Doctrine Not Applicable When Purported 

Employee Pursues Common-Law Negligence Claim Against Two or More
Non-Subscribers

 

            Texas is unique
in American jurisprudence because it is the only state that allows an employer
to reject statutory workers’ compensation insurance.  See Lawrence v. CDB Serv., Inc., 44 S.W.3d
544, 552 (Tex. 2001); Tex. Lab. Code Ann. § 406.002 (Vernon
1996).  If an employer chooses not to
subscribe, its employee must prove that his or her injuries were proximately
caused by the employer’s or a co-worker’s negligence.  Tex. Lab. Code Ann. §
406.033(d).  However, employers are
discouraged from choosing non-subscriber status because they may not assert
traditional common-law defenses available to defendants in a negligence cause
of action including: (1) contributory or comparative negligence; (2) assumption
of risk; and (3) negligence of a fellow employee.  Tex.
Lab. Code Ann. § 406.033 (a),(b); Lawrence, 44 S.W.3d
at 551–52; The Kroger Co. v. Keng, 23 S.W.3d 347, 349–52 (Tex.
2000).  Accordingly, a non-subscriber
employer bears a substantial risk because assignment of any negligence to the
employer results in 100% liability.  See Kroger, 23 S.W.3d at 351 (quoting
David W. Robertson, The Texas Employer’s
Liability In Tort For Injuries To An Employee Occurring In The Course Of The Employment,
24 St. Mary’s L.J. 1195,
1199–1201 (1993) (“The unavailability of the contributory negligence defense
means that an employer whose fault, however slight, was a proximate cause of
the injuries will owe full damages, notwithstanding any perception that the
injured employee was also at fault in a way that was a proximate cause of the
injuries.”)).

            The Coronados do not
cite, and we have not found, a case in which a Texas court has
applied section 226 and the joint employer doctrine when a purported employee
pursues a common-law negligence claim against two or more non-subscribers.  We decline to do so now because application
of the joint employer doctrine in such cases is inequitable and problematic.

            The Texas Legislature has enacted
specific rules apportioning liability between joint tortfeasors
according to each tortfeasor’s assigned percentage of
responsibility.  Tex. Civ. Prac.
& Rem. Code Ann. §§ 33.013, 33.015 (Vernon
1997).  The Legislature has also
determined that a joint tortfeasor is not jointly and
severally liable for causing a claimant’s injury unless its share of liability
is greater than fifty percent.  Tex. Civ. Prac. & Rem. Code Ann.
§ 33.013(b).  As an exception, in cases
involving environmental and toxic torts, a joint tortfeasor
is jointly and severally liable if its share of responsibility is equal to or
greater than fifteen percent.  Tex. Civ. Prac. & Rem. Code Ann.
§ 33.013(c).  Further, the amount of
damages awarded are reduced by the claimant’s percentage of responsibility, if
any.  See
Tex. Civ. Prac. & Rem. Code Ann.
§ 33.012 (a) (Vernon 1997).

            However, these rules do not apply to
non-subscribers in an employee’s negligence action because they are barred from
asserting comparative responsibility.  See Kroger, 23 S.W.3d at 349–52; Ortiz v. 
Furr’s Supermarket, 26 S.W.3d 646, 649–50
(Tex. App.—El Paso 2000, no pet.).  For
example, an injured worker sues A, B, and C, all non-subscribers, claiming they
are all his employers because they had a general right of control.  A jury assesses negligence against A, B, and
C.  Because comparative responsibility is
unavailable to A, B, and C, the jury does not assign percentages of negligence
to them.  Therefore, courts would be
compelled to fashion a common-law allocation in contravention of the statutory
apportionment.  The situation would be
particularly inequitable if A were solvent, but B and C were insolvent.  Because apportionment of liability would not
apply, A could be 100% liable for violating a duty to the worker based on a
general right of control even though it did not create or directly control the
risk that gave rise to the injury.  A’s
responsibility for causing the injury might be minimal compared to B’s and C’s.  Further, because a worker’s comparative
responsibility may not be submitted, under the Coronados’ theory, A
could be assigned 100% liability regardless of any perceived negligence on the
part of the worker, even if it did not create the risk or control the details
of the work resulting in accidental injury. 
Accordingly, we decline to adopt a general right of control test for
imposing liability on multiple non-subscribers because allocation of liability
is impractical and inequitable.

            Instead, the entity that creates and
directly controls the circumstances giving rise to the risk of injury should
bear the liability.  Only the
non-subscriber controlling the details
of the work at the time of the injury should be subjected to 100% liability for
any degree of negligence that causes injury to a worker.  See
Newspapers, 380 S.W.2d at 590–92; INA
of Tex., 808
S.W.2d at 293.  Our holding is also
consistent with the principle, long recognized by Texas courts,
that “no man can serve two masters; for either he will hate the one and love
the other; or else he will hold to the one, and despise the other.”  See Tex. Refin. Co. v. Alexander, 202 S.W.
131, 134–37 (Tex. Civ. App.—Amarillo 1918, no writ); see also Hume v. Baggett & Baggett,
221 S.W. 1002, 1003 (Tex. Civ. App.—San Antonio 1920,
no writ).

VII.  The Borrowed Servant Doctrine

            Texas courts
have long recognized that a general employee of one employer may become the
borrowed servant of another.  Sparger v. Worley Hosp., Inc., 547 S.W.2d 582,
583 (Tex. 1977); Producers Chem. Co. v. McKay, 366 S.W.2d
220, 225 (Tex. 1963); Gibson v. Grocers Supply Co., Inc., 866 S.W.2d 757, 760 (Tex.
App.—Houston [14th Dist.] 1993, no writ). 
The critical consideration in determining whether a general employee has
become a special employee or borrowed servant is which employer had the right
to control the manner and details of the employee’s work at the time of the
accident.  Sparger, 547 S.W.2d at 583 (stating essential inquiry is whether alleged
employer had the right to control employee in the details of the specific act
raising the issue of liability); Smith v.
Otis Eng’g Corp., 670 S.W.2d 750, 751 (Tex.
App.—Houston [1st Dist.] 1984, no writ) (stating employer is the entity with
the right to control employee at the time of the accident).  If the general employer controls the manner
of the employee’s performing services, he remains an employee of the general
employer; however, if the employee is placed under another employer’s control
in the manner of performing services, the employee becomes the borrowed servant
of that employer.  McKay, 366 S.W.2d at 225.  

            For liability purposes, where one
entity “borrows” another’s employee, workers’ compensation law identifies one
party as the “employer” and treats all others as third parties.  Smith,
670 S.W.2d at 751 (stating that when
one entity “borrows” another’s employee, there may be some division of
authority between the parties as to the right to control the employee’s
performance of the particular task; however, the law continues to require that
one party be named the employer, and all others be classified as third parties
outside the purview of the workers’ compensation law); see Archem Co. v. Austin Indus., Inc.,
804 S.W.2d 268, 269 (Tex. App.—Houston [1st Dist.] 1991, no writ).  Thus, in the workers’ compensation context,
the borrowed servant doctrine protects the employer who had the right of
control at the time of the accident from common-law liability.  Williams
v. APS, Inc., 969 S.W.2d 433, 435 (Tex. App.—Houston [14th Dist.] 1997, no
pet.); Carr v. Carroll Co., 646
S.W.2d 561, 563 (Tex. App.—Dallas 1982, writ ref’d n.r.e.).

            To achieve consistency and
predictability in the law, the borrowed servant doctrine should be applied to
both subscribers and non-subscribers.  See Sparger,
547 S.W. 2d at 584 (stating the principle of borrowed servant “cuts across the
entire law of principle and agent and employer and employee”); Ortiz, 26 S.W.3d at 652 (applying the
borrowed servant doctrine to non-subscribers).[15]  The borrowed servant doctrine can be fairly
applied across the board due to the potential mixture of subscribers and
non-subscribers present at any worksite. 
For example, if a non-subscriber loans an employee to a subscriber, both
should have the benefit of the borrowed servant doctrine, which would render the
subscriber the employer and the non-subscriber a third party.  See
Smith, 670 S.W.2d at 751.  Therefore,
the subscriber would be immune from suit under the workers’ compensation laws
as the employer.  See Williams, 969 S.W.2d
at 435; Carr, 646 S.W.2d at 563.  Further, the non-subscriber, as a third
party, would be allowed to assert common-law and statutory defenses if sued for
negligence.  However, if the
non-subscriber were also classified as an employer based on a general right of
control, it would be deprived of common-law and statutory defenses and would be
100% liable to the worker despite its lack of control over the details of the
work that resulted in injury.  See Tex.
Lab. Code Ann. § 406.033 (a),(b); Lawrence, 44 S.W.3d
at 551–52; Kroger, 23 S.W.3d at
349–52.  This result would be contrary to
the principle that the entity that creates and directly controls the
circumstances giving rise to the risk of injury should bear liability as an
employer.  In an opposite scenario, if a
non-subscriber borrows an employee, it would be classified as the employer and,
therefore, lose common-law defenses in an employee’s negligence suit.

            Consistent with the borrowed servant
doctrine, we hold that the non-subscriber controlling the details of an
employee’s work at the time of injury should be the only entity bearing the nondelegable duty to provide a safe place to work.  See
McKay, 366 S.W.2d at 225; Smith,
670 S.W.2d at 751.  As the court
recognized many years ago in Alexander:

Very high authority has
said, in effect, “No man can serve two masters.”  This principle is fundamental in the law of
master and servant.  There cannot be more
than one responsible superior for the same subordinate at the same time and in
the same transaction.  When it is
conceded one is the servant of one of two or more persons, it is sometimes
difficult to tell who is the master.  In
modern industry the line of cleavage is often difficult of ascertainment.  Before one is the master he must have the right
and power to control the servant in the particular work in hand, however temporary
may be that right and power.

 

Alexander, 202 S.W. at 134.[16]

            Accordingly, we reject application
of section 226 and the joint employer doctrine when a purported employee
pursues a common-law negligence claim against two or more non-subscribers
unless joint employment is authorized by statute[17] or the
subject of a contract.[18] 




 








VIII.  Right To Control
Details Of 

Cenobio’s Work At The Time Of His Injury

 

            The pivotal issue is whether Schoenmann, and not FTI, had the right to control the
details of Cenobio’s work at the time of his
accident.[19]  The Coronados claim
overlap in the supervisory ranks establishing Schoenmann’s
right to control Cenobio’s work at the time of the
accident is demonstrated by Gerald Farrell’s dual role as vice president of FTI
and general manager of both Schoenmann and FTI.  Farrell had the right to control FTI
employees as long as he went through the employee’s supervisor.  Lee Odale, FTI’s maintenance supervisor, was Cenobio’s
direct supervisor.  Odale’s
immediate supervisor was Farrell.  Odale testified that when he had questions, he asked
Farrell.  The Coronados argue a
reasonable inference exists that, as Odale’s
supervisor, Farrell provided supervisory instruction regarding Cenobio’s repair of the cull tank.  The undisputed
evidence establishes that no one instructed Odale to
replace the damaged belt on the cull tank. 
Instead, he noticed the damaged belt and instructed Cenobio
to replace it.  See Gonzales v. Hearst Corp., 930 S.W.2d 275, 279 (Tex.
App.—Houston [14th Dist.] 1996, no writ) (accepting only the undisputed facts or appellant’s version
of disputed facts, avoiding all evaluations of credibility, and crediting all
permissible inferences to appellant in review of directed verdict).  Even without considering Odale’s
undisputed testimony, we find that while the Coronados presented
evidence that Farrell was involved in some aspects of the management of Schoenmann, there is no evidence that Farrell was directly
involved in replacement of the belt on the cull tank or that he otherwise
instructed Odale or Cenobio
on its replacement.

            Anthony Colunga,
as FTI’s plant manager, controlled Cenobio’s work on occasion. 
The Coronados refer to
testimony that Colunga went to Farrell for
instruction and guidance.  Based on this
testimony, the Coronados contend a
reasonable inference exists that Farrell instructed Colunga
regarding repair of the cull tank.  Colunga, in turn, supervised Cenobio
when Odale told Cenobio to
ask Colunga for additional personnel to assist
replacing the belt.  The Coronados, however,
have taken this isolated testimony out of context.  Colunga continued
to explain that he went to Pat Goolsby, president of
FTI, if he had a question concerning the operation of the line and only went to
Farrell regarding personnel issues.  In
any event, we cannot conclude from this evidence that Farrell provided any
instruction to Colunga regarding replacement of the
belt on the cull tank.

            The Coronados contend Schoenmann’s right of control is further shown by Mark Steakley’s service as vice president, general counsel, and
chief financial officer of Schoenmann, as well as
officer in charge of safety for FTI.  The
Coronados argue that
Steakley witnessed the accident; therefore, it can be
reasonably inferred that he was, in his role as an employee of Schoenmann, directly overseeing Cenobio’s
replacement of the belt on the cull tank.[20]  Steakley’s
testimony on this point was equivocal, and we cannot draw a reasonable
inference from his mere view of the accident, if indeed he saw it happen, that
he was exercising the right to control details of Cenobio’s
work.  Other than evidence of his
overlapping duties between Schoenmann and FTI, there
is no evidence that Steakley was exercising control
over the details of Cenobio’s work at the time of the
accident.  The Coronados further
assert that it was Steakley’s responsibility to
investigate the accident.  Any actions
taken after the accident, however, are not relevant to determining control at
the time of the injury.  See Archem Co.,
804 S.W.2d at 270; Denison v. Haeber Roofing Co., 767 S.W.2d 862, 866 (Tex.
App.—Corpus Christi 1989, no writ). 
Therefore Steakley’s post-accident actions, as
well as other evidence of Schoenmann’s actions after
the accident, are irrelevant to the issue of right of control at the time of Cenobio’s injury.  We
must consider the facts and circumstances as they existed at the time of the
injury.  Anchor Cas. Co. v. Hartsfield, 390 S.W.2d
at 469, 471 (Texas 1965); Goodnight v. Zurich Ins. Co., 416 S.W.2d
626, 630 (Tex. Civ. App.—Dallas 1967, writ ref’d n.r.e.).  

            The Coronados point to
additional evidence of overlap of supervisory personnel.  For example, when Cenobio
applied for a job, he went through Schoenmann’s
personnel office.  The record indicates Schoenmann hired workers for both Schoenmann
and FTI.  Although Cenobio’s
job application is on an FTI letterhead, it was approved by both Farrell,
general manager of Schoenmann and FTI, and Colunga, plant manager for FTI.  In addition, Cenobio
was issued a safety manual showing Schoenmann’s and FTI’s names on the cover. 
Finally, the Coronados argue that
despite Schoenmann’s evidence that it did not use the
cull tank, it nonetheless would have benefitted from Cenobio’s replacing the belt because of the interdependence
of the two businesses.  At most, the Coronados presented
some evidence of overlapping supervisory duties and joint administrative
functions between Schoenmann and FTI.  Such evidence, however, is not sufficient to
raise a fact issue whether Schoenmann exercised control
over the details of Cenobio’s work (replacement of
the belt on the cull tank) at the time he was injured.

IX.  Conclusion

            The Coronados elected to
pursue Schoenmann solely under the theory that Schoenmann was Cenobio’s joint
employer at the time of his injury. 
However, under our analysis and application of Texas law,
evidence of a general right of control is not sufficient to impose liability on
multiple employers for breach of the nondelegable
duty to provide a safe place to work. 
The Coronados could have pursued third party
claims against multiple persons or entities having a general right of control
over the work environment; however, a cause of action for breach of duties owed
by employers to employees may be asserted only against the entity that had the
right to control details of Cenobio’s work at the time of injury.

            We find the Coronados failed to
present any evidence of probative value sufficient to raise a fact issue that Schoenmann had the right to control the details of Cenobio’s work (replacement of the belt on the cull tank)
at the time of the accident.  Therefore,
the trial court properly granted a directed verdict in favor of Schoenmann.  All of
the Coronados’ issues
are overruled.  Accordingly, we affirm
the judgment of the trial court.

                                                                                    

                                                                        /s/        Charles W. Seymore

                                                                                    Justice

 

Judgment rendered and Opinion filed
February 6, 2003.

Panel
consists of Justices Anderson, Hudson, and Seymore.

 











            [1]  The Coronados pleaded that FTI and Schoenmann were engaged in a single business enterprise as
an alternative theory under which to hold Schoenmann
liable; however, this issue was not tried.





            [2]  FTI is not a party to this appeal. 





            [3]  After Cenobio filed
suit and signed an affidavit stating he was employed by Schoenmann
at the time of the accident, FTI filed a declaratory judgment action in the
United States District Court.  FTI
sought  a determination as to Cenobio’s employment status and reimbursement of
approximately $300,000 paid under its Voluntary Employee Injury Benefit
Plan.  The District Court found Cenobio’s injury occurred in the course and scope of
employment with FTI.  Schoenmann
contends this ruling collaterally estopped the Coronados from denying that Cenobio was FTI’s employee and
from claiming Cenobio was Schoenmann’s
“borrowed servant” at the time of the injury. 
Appellants do not contend that Cenobio was Schoenmann’s borrowed servant.





            [4]  It is well established that an employer has
certain nondelegable and continuous duties to his
employees.  Leitch v. Hornsby,
935 S.W.2d 114, 117 (Tex. 1996); Farley v. M M Cattle Co., 529 S.W.2d 751,
754 (Tex. 1975).  Among
these are the duties to furnish a reasonably safe place to work, warn employees
of the hazards of employment, supervise employees’ activities, and furnish
reasonably safe instrumentalities with which to work.  Farley,
529 S.W.2d at 754.  An employer must
exercise ordinary care, based on standard negligence principles, in carrying
out these duties.  Leitch, 935 S.W.2d at 117; Werner
v. Colwell, 909 S.W.2d 866, 869 (Tex. 1995).





            [5]  The Coronados also
rely on Worley Hosp., Inc. v. Caldwell,
529 S.W.2d 639 (Tex. Civ. App.—Amarillo 1975), rev’d sub nom. Sparger
v. Worley Hosp., Inc., 547 S.W.2d 582 (Tex. 1977), in which the court of
appeals cited section 226 in holding that several nurses whose negligence
injured a patient were servants of both the defendant hospital and the
defendant surgeon because they (1) exercised concurrent control over the nurses
and (2) the defendant surgeon was the “captain of the ship” while in the operating
room.  Id. at 641–43.  However, the Texas Supreme Court stated that
the borrowed servant doctrine, not the “captain of the ship” doctrine, should
be applied to determine whether the nurses were servants of the surgeon.  Sparger, 547
S.W.2d at 583–85.  The court remanded for
the court of appeals to determine whether the jury’s finding that nurses were
not the surgeon’s borrowed servants was against the great and overwhelming
weight of the evidence.  Id. at 589.

 





            [6]  Under the doctrine of respondeat
superior, an employer is vicariously liable for the negligence of an agent or
employee acting within the scope of his or her agency or employment, although
the principal or employer has not personally committed a wrong.  See
Baptist Mem’l Hosp. Sys. v. Sampson, 969 S.W.2d
945, 947 (Tex. 1998).





            [7]  In Pridgen, a dispute arose over which of three workers’
compensation carriers must pay benefits to the widow of a worker killed while
working on a dragline at a shipyard.  The
widow claimed the deceased was an employee of the shipyard, the dragline
operator, and another company that arranged for the dragline operator to
provide the dragline to the shipyard. 
223 S.W.2d at 218–19.  Although
the court suggested the possibility of a co-employer relationship, it decided
one did not exist.  Id. at 219–22.





            [8]  In Thate, an injured worker who recovered workers’ compensation
benefits from his employer’s carrier also sought FELA benefits from a
railroad.  595 S.W.2d at 594–95.  The court noted that parties in similar suits
have raised the argument that joint employment exists and recovery may be had
in some forms from both employers; however, neither party to this case raised
joint employment, so the court did not consider it.  Id. at 596 n.1. 





            [9]  In Assoc.
Indem. Co.,
the workers’ compensation carrier for a temporary employment company sought
reimbursement for benefits paid to an employee injured while working for the
employment company’s customer.  524
S.W.2d at 375–76.  Although one party
argued the joint employer doctrine applied, the court  did not need to accept or reject the doctrine
under the facts of the case.  Id. at 375–76.





            [10]  In
Callaway, the court, without discussing the joint employer theory, upheld a
jury finding that a workers’ compensation claimant was injured in the course
and scope of his employment for two employers. 
429 S.W.2d at 549–51.





            [11]  The SLSA was not in effect when Brown was
injured; however, we cited the fact that the SLSA now recognizes co-employer
relationships in staff leasing services as one reason for our conclusion that
Aztec and Administaff were Brown’s co-employers.  Id. at 847.





            [12]  We recognize there has been some confusion
among the courts as to the extent of our holding in Brown.  Some courts have
cited Brown as generally supporting the
joint employer doctrine within a workers’ compensation setting.  See,
e.g., Garza v. Excel Logistics, Inc.,
2002 WL 1041050 at *2 (Tex. App.—Houston [1st Dist.] May 23, 2002, no pet. h.); Ingalls v. Standard Gypsum, L.L.C., 70 S.W.3d 252, 256 (Tex. App.—San
Antonio 2001, pet. denied); Richmond v. L.D. Brinkman & Co. (Tex.), Inc., 36 S.W.3d 903, 906 (Tex.
App.—Dallas 2001, pet. denied); Hoffman
v. Trinity Indus., Inc., 979 S.W.2d 88, 90 (Tex. App.—Beaumont 1998, pet. dism’d by agr.).  However, another court has limited Brown to its specific facts, namely the
parties contractually agreed to be co-employers.  See
Alvarado v. Wingfoot Enter., 53 S.W.3d 720, 725
(Tex. App.—Houston [1st Dist.] 2001, pet.
granted). 

 





            [13]  The question of master-servant status under
FELA is to be determined by reference to common-law principles.  Kelley,
419 U.S. at 323; Baker, 359 U.S. at 228.





            [14]  See,
e.g., Kelley, 419 U.S. at 327 (finding that although railroad employees
were occasionally in area where unloading operations were conducted and
occasionally advised and consulted with trucking company’s employees, railroad
employees did not play significant supervisory role in unloading operations;
and finding neither that injured employee was being supervised by railroad
employees at time of accident nor that railroad employees had any general right to control activities of
injured employee); Baker, 359 U.S. at
228–29 (finding evidence showing that employee’s work was part of the
maintenance task of railroad, railroad furnished material, and supervisor
employed by railroad exercised directive
control over details of job raised issue for jury’s determination); Lindsey, 775 F.2d at 1324–25 (finding
evidence that railroad representatives directed
contractor’s employees concerning which cars to unload, gave specific orders and instructions on
occasion, inspected loading and positioning of trailers on the cars, and that
contractor’s employees consulted with railroad representatives on questions
regarding their work supported jury’s finding that injured employee was
employee of railroad).  





            [15]  In Ortiz,
the plaintiff was assigned by S&M Cleaning to clean floors at Furr’s, where he was assaulted by two of Furr’s employees.  26
S.W.3d at 649–50.  A jury found that the
plaintiff was Furr’s borrowed servant, and Furr’s was negligent as a non-subscriber under the workers’
compensation act.  Id.  at 650. 
The jury also assigned fifty percent comparative negligence to S&M,
and the trial court reduced the award against Furr’s
accordingly.  Id.  On appeal, the plaintiff argued that the
trial court impermissibly reduced the award because it was based on
non-subscriber negligence.  Id. at 655.  The court held that there was no evidence
that the plaintiff was Furr’s borrowed servant
because there was no evidence that he was acting at Furr’s
direction or under its control at the time of the injury.  Id. at 652.  Therefore, because Furr’s
was not the plaintiff’s employer at the time of the injury, it could not be
liable for failing to provide a safe place to work and did not lose the benefit
of S&M’s proportionate responsibility.  Id. at 655.  Instead, the award against Furr’s was reduced by S&M’s
proportionate responsibility on the alternate theory that Furr’s
was negligent for failing to supervise the employees who assaulted the
plaintiff.  Id. at 652 n.3.





            [16]  Section 226 of the Restatement of Agency was
adopted after Alexander.  Because section 226 specifically provides
that one may have two masters, we do not imply that the principle “no man can
serve two masters” is applicable when a third party attempts to impose
vicarious liability on both masters.  The
Alexander court addressed employer
liability to an employee, and we apply the principle “no man can serve two
masters,” cited therein, only to employee versus employer liability.





            [17]  See,
e.g., FELA, 45 U.S.C.A. §§ 51–60;
Kelly, 419 U.S. at 324; SLSA, Tex. Lab. Code Ann. §§ 91.001-91.063.





            [18]  Two or more subscribers may contractually
agree to be joint employers.  However, we
do not address that situation because there is no such agreement in this
case.  We limit our ruling to situations
in which an injured worker alleges two or more nonsubscribers
are his joint employers in order to impose the nondelegable
duties of an employer on both.





            [19]  Schoenmann asserts
that the Coronados are collaterally estopped from claiming that Schoenmann
was Cenobio’s employer at the time of the injury
because a United States District Court has previously ruled that his injury
occurred while in the course and scope of his employment for FTI.  A party seeking to assert collateral estoppel must establish that: (1) the facts sought to be
litigated in the second action were fully and fairly litigated in the first
action; (2) those facts were essential to the judgment in the first action; and
(3) the parties were cast as adversaries in the first action.  Sysco Food Serv., Inc. v. Trapnell, 890
S.W.2d 796, 801 (Tex. 1994).  Because we hold there can be no joint
employment in this case, collateral estoppel based on
the federal court ruling would preclude the Coronados from claiming Schoenmann was Cenobio’s
employer.  Further, the Coronados state in their brief that
FTI was Cenobio’s employer.  However, we will proceed with analysis of the
evidence because, even without applying the collateral estoppel
doctrine, the Coronados failed to present any
evidence of probative value sufficient to raise a fact issue that Schoenmann had the right to control the details of Cenobio’s work at the time of the accident.





            [20]  Without providing any supporting citation to
the record, the Coronados contend Steakley
personally observed Cenobio and Flores begin repair
efforts on the cull tank.  In our review
of the record, we found no evidence to support this assertion.